Staples, J.
delivered the opinion of the court.
The first question for our consideration is as to the true character of the suit brought by Mrs. Ellen McCue in the year 1863. It is clear that the bill was not filed under the statute which authorizes a suit in the *525 name of the guardian for the sale of the ward’s real estate. It was not so intended, and it would be unjust to all the parties so to treat it.
The hill is plainly a suit for assignment of dower to the widow, and for partition of the realty among the heirs, or a sale, as might be deemed most eonducive to the interests of all. The complainant describes herself as widow and as guardian. Although she does not formally sue as guardian, the averments are sufficient to bring her before the court in that character. She sets forth the names of the children; the quantity and quality of the lands; that it would be for the interest of all the parties to sell it, either entire or in two or more parcels; she asks that the interests of her infant children may be ascertained and placed under her control as guardian, and that such orders may be entered as may be necessary for a full and final adjustment and settlement of the rights of all the parties in the whole estate, real and personal. In this respect the case is very similar to that of Cooper v. Hepburn, 15 Gratt. 551. In that case objection being made that the bill did not formally aver that it was filed by the complainant in his capacity of guardian, Judge Daniel, speaking for the whole court, said: “But surely this can furnish no sufficient ground for reversing the proceedings, when it is seen that the hill distinctly states his qualification as guardian of the children ; details the facts and reasons going, in his opinion, to show that it would be to the interest of the children as remaindermen that the land should be sold and the proceeds properly invested.” How what is here said very strongly applies to the case before us; and we may fairly consider the original bill of Mrs. McCue filed as well in her capacity of guardian as in that of widow.
*526 It is said that it is not competent for a guardian to maintain a suit for partition. It is difficult to perceive any very good reason why he is not. The guardian hag ^he legal right to the possession of the ward’s lands during the guardianship. He may maintain trespass for an injury to the soil; or even ejectment for its recovery. He may grant a copy-hold in reversion or remainder in his own name. He may have a writ of right of ward, and recover the land and damages, as well as the body of his ward. 2 P. Wms. 122; Truss v. Old, 6 Rand. 556.
In Bacon’s Abridgement it is laid down, that a guardian may make partition in behalf of the infant; and it will bind the infant if equal; for the guardian is appointed by law to take care of the inheritance of the ward. Bacon Abr., Guardian, 415. And in Schouler on Domestic Relations, 472, the doctrine on this subject is thus expressed: “Guardians may assign dower; and it seems the assignment will bind the heirs. Guardians may also institute proceedings for partition. Such proceedings in England should be by bill in equity. In this country the subject is usually regulated by statute.”
These authorities sufficiently show that it is competent for the guardian to institute proceedings in equity for a partition of the ward’s lands. Indeed, the judge of the Circuit court has recognized the original bill as a suit for partition. After setting aside the decree of sale under which the appellant claims title, the decree directs a partition of the lands which are the subject of controversy here.
But if it be conceded, that according to strict right, a suit for partition cannot be maintained by a person •occupying the position of both guardian and widow, «till, if a bill is filed by such person for assignment of *527 dower, and in the progress of the suit the court, having all the heirs before it, should ascertain that these interests will be protected by a partition or sale, there would seem to be no reason why it should not decree accordingly, instead of turning the parties around to a new suit. It would be simply a decree between defendants. Such an irregularity, if it be one, would clearly not be sufficient to reverse the proceedings and vacate the sale as against a purchaser for value clothed with the legal title.
The only remaining inquiry is, whether the court was warranted in decreeing a sale of the lands, instead of directing a partition. It must be remembered that the sale took place in 1868; that the rights of a bona .fide purchaser are involved, a purchaser who has paid the full amount of the purchase money, whose purchase was confirmed by the court; who received his ■conveyance, and was put in possession of the property. It is held in many states, that such a purchaser will not be affected by errors in the proceedings under which the sale was made. It is the established doctrine of the Supreme Court of the United States, and of the ■courts of several of the states, that if the court has jurisdiction of the subject-matter, and the proper parties are before the court, rights acquired by third persons under authority of the decree will he sustained, notwithstanding a reversal of such decree.
In Gray v. Brignardello, 1 Wall. U. S. R. 627, 634, the Supreme Court of the United States say: “Although the judgment or decree may be reversed, yet •all rights acquired at a judicial sale while the decree or judgment was in force, and which they authorized, will be protected. It is sufficient for the buyer to know that the court had jurisdiction, and exercised it, •and that the order, on the faith of which he purchased, *528 was made, and authorized the sale. With the errors, of the court he has no concern. These principles have so often received the sanction of this court, that it would not have been necessary again to reaffirm them had not the extent of the doctrine been questioned at the bar. In support of this view, the court cites the case of Thompson v. Tolmie, 2 Peters’ R. 168; Voorhees v. Bank of United States, 10 Peters’ R. 449; aud other cases. See also articles cited in Rorer on Judicial Sales.
These authorities are not cited for the purpose of' following or approving the rule they establish, but simply to show the extent to which the decisions of other states have been carried. This court has never-given its sanction to the doctrine, that the title of the-purchaser is not affected by a reversal of the decree under which the sale is made, nor has it expressly repudiated that doctrine. The question with us must be regarded as an open one.
It is, however, well settled with us, that an infant, as a general rule, is as much bound by a decree against him as a person of full age. He is not permitted to impeach such decree except on the same grounds as a person of full age might -have impeached it, such as. fraud, collusion or error. 1 Dan. Ch. Pr. 221.
In Williamson v. Gordon, 19 Ves. R. 114, Lord Eldon said: “Admitting the right of the infant to show cause, he cannot do that if the decree would have been right-against him had he been an adult. He can show nothing but error in the decree.”
In Pierce’s adm’ors v. Trigg, 10 Leigh 406,429, Judge Tucker said: “The decree against an infant, though it gives him a day in court to answer, is of the nature of a final decree, and is carried into execution as such; nor is it reversible, but for error or fraud or collusion.”
*529 Since the revisal of 1849 and ’50, it is unnecessary to insert in the decree a provision allowing the infant a day to show cause; but in any proper case he may, within six months after he arrives at maturity, show such cause in like manner as if the decree contained such provision.”
It is laid down by some authorities, that in suits for partition the infant has no day in court, but is bound by the decree absolutely; but the better opinion is, that he has the right in such cases to show cause against the decree. This privilege has, however, been taken away by statute in England, and now in Buits for partition in the courts of that country no day is given. But in this state the rule seems to be well settled, that whenever the court is asked to sell and convey an infant’s inheritance, he is entitled to an opportunity of making a defence at any time within six months after he arrives at full age. The only exception to this rule is found in those proceedings in equity under the statute for the sale of small inheritances of less value than three hundred dollars. Parker & als. v. McCoy & als., 10 Gratt. 594.
Conceding that the title of the purchaser falls with the reversal of the decree, and that the infant can only reverse upon showing error in the decree, the question still recurs as to the nature of the error sufficient for such reversal as against a purchaser not a party to the suit, who has paid the purchase money and received his conveyance under a decree of confirmation.
According to the English practice, if a mortgage is foreclosed the infant has his day; but if a sale is decreed, instead of a foreclosure, the infant is absolutely bound by the decree, and has no day. And so if the land is decreed to be sold to satisfy judgment credi *530 tors, without an account of the personal estate, the purchaser will not be affected by the error.
Neither in the case of a foreclosure, nor a sale under the mortgage, is the infant permitted to unravel the accounts, nor to redeem by paying what is reported as due. See Wilkinson’s adm’or v. Oliver’s representatives, 4 Hen. & Mun. 450.
In Parker et als. v. McCoy et als., 10 Gratt. 594, 605, Judge Pee in delivering the opinion of the court said: “ There are strong authorities to show that a fair purchaser is not bound to go through all the proceedings and to look into all the circumstances, and see that the decree is right in all its parts, and that it cannot be altered in any respect. He cannot, of course, be protected against a title not in issue in the cause, nor against the claims of persons not parties to the cause, and therefore not bound by the decree; but it would seem that he has the right to presume the court has taken the necessary steps to investigate the rights of parties, and upon such investigation has properly decreed a sale.
In Daniel & als. v. Leitch, 13 Gratt. 195, 210, Judge Moncure also speaking for the other judges said: “The purchaser at a judicial sale will not be affected by error in the decree, such as not giving a day to show cause in cases in which a day ought to be given, or in decreeing a sale of lands to satisfy judgment debts without an account of the personal estate. A fortiori, he will not be affected by any imperfection in the frame of the bill if it contain sufficient matter to show the propriety of the decree.
In the case of Walker’s ex’or v. Page et als., 21 Gratt. 636, 643, Judge Christian, in delivering the opinion of the court, said: “ The right of an infant to show cause against a decree which affects his interests after he ar *531 rives at age, must be limited to the extent, to show cause existing at the rendition of the decree, and not such as arose afterwards.”
These extracts, and others that might be given, show that while this court has never gone as far as the courts of other states in favor of purchasers at judicial sales, it has, on all occasions, manifested a very strong disinclination to interfere with the rights of such purchasers, unless upon palpable and substantial errors in the proceedings and decrees under which such titles are acquired.
In the language of this court, in Parker & als. v. McCoy et als., already cited: “It is, of course, to the interest of the infant that the property should bring the best possible price; and it is to the public interest that the real estate of the citizen should be properly cultivated and improved. But who would be willing to purchase the land of an infant at a fair price, or to improve it after he should purchase it, if at a remote period, when the infant attained his age, he could come in, rip up the whole proceeding, and reclaim the property. The effect must be either to put an end to such sales altogether, or to occasion ruinous sacrifices, still farther impoverishing the helpless and needy object of the court’s protection.”
In Voorhees v. Bank of the United States, 10 Peters’ R. 449, 476, the Supreme court say: “The principles which must govern this and all other sales by judicial process, are general ones adopted for the security of titles, the repose of possession, and the enjoyment of property by innocent purchasers, who are the favorites of the law in every court and by every code.”
Bearing these principles and rules of decision in mind, we are to consider whether the court, in decreeing the sale of the infant’s land, committed such error *532 as demands a reversal of the decree and the vacation of the sale. Was it a case for partition exclusively, or might the court, under the circumstances, direct a sale 0f the different interests of adults and minors? Our statute provides that: “In any case in which partition cannot be conveniently made, if the interests of those who are entitled to the subject or its proceeds will be promoted by a'sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be an infant, insane person, or married woman, may order such sale, or such sale and allotment, and make distribution of the proceeds of sale according to the respective rights of those entitled.
Under this section, the case must be one in which partition cannot be conveniently made; and it must appear that the interests of the parties will be promoted by a sale of the property. These concurring circumstances are necessary to warrant a decree for such sale. It is not necessary they should appear from the report of commissioners, or by the depositions of witnesses. It is sufficient if the facts appearing in the record reasonably warrant the decree of sale. This is especially true when the proceeding is to defeat the title of an innocent purchaser.
If the report of the commissioners appointed by the court to assign the widow’s dower and partition the land of the infant had said, or even indicated, that such partition could be conveniently made, or that the interest of the parties would not be promoted by a sale at that time, it would be very difficult, by anything appearing in the record, to overcome the weight due to evidence of that character. But I do not understand the report as making any such averment, or containing any recommendation of the kind. The com *533 missioners do say it is not best for the widow, or for the interest of all concerned, to sell the whole tract, out and out, altogether, or in parcels. But this statement was made in answer to the proposition to sell the widow’s dower also, and pay her a sum in gross, or the interest on one-third of the purchase money. They, the commissioners, express the opinion that, under all the circumstances, it is best for her and the infant children to have a comfortable home and land enough to guarantee to her at least an adequate and secure support. And they say: “Accordingly we have assigned the widow” her dower, including the mansion house and improvements, and one hundred and eighty-seven acres of land.
The commissioners do not partition the residue of the tract among the heirs according to their respective interests—they do not recommend it—they do not intimate that it could be conveniently done. What they did do was to divide the tract into two parcels of two hundred and forty acres, each equal in value. These parcels to be sold, or one of them to be allotted to four heirs, who may unite in taking it as co-parceners, and the other to be disposed of in the same way. Of course this plan was not feasible unless all the parties consented to its adoption. They did not consent to it, and of course it was abandoned. After the assignment of dower, and of David T. Bell’s two interests, there remained only four hundred and seventy acres for division among eight heirs, being about sixty acres to each one. The commissioners clearly saw the difficulty of partitioning a small tract among so many, with due regard to wood and water and places of residence. They were no doubt satisfied it could not be conveniently done, and the division into two tracts was the only plan that could be adopted consistently with *534 the interests of all the parties. It is impossible to give any other interpretation to the report.
After that report was made and returned, the parties by their counsel suggested to the court, it would promote the interests of all concerned to sell the residue of the tract in three parcels, rather than make an assignment of any particular parcel to any one or more of the heirs. A decree of sale was entered accordingly; and Alexander H. H. Stuart, William H. Harman, and Hugh W. Sheffey, were appointed commissioners to make the sale. The sale was made, and the appellant became the purchaser of two parcels—one of two hundred and thirty-four acres at one hundred and eighty-five dollars per acre, and the other of one hundred and eighty-three acres at one hundred and seventy-five dollars per acre, making in the aggregate the sum of $75,920.62. The adult heirs, including the husbands of those that were married, expressed their entire approval of this sale, their conviction that the land was sold for its full value, and they united in a written request to the court to confirm the sales. Mrs. McCue, the mother and guardian of the infants, joined with the others in making this request. Upon this ratification by all concerned, the purchaser paid the whole amount of the purchase money, and the court confirmed the sale—the learned judge, the Hon. Lucas P. Thompson, expressing his conviction that the land was sold for a fair price. Thereupon a deed of conveyance was executed, and the purchaser placed in possession.
We have here then the report of the commissioners that the land could not be divided; we have the statement of all the parties concerned, that the interest of all would be promoted by a sale; we have the written request of the six adults, and the mother and guard *535 ian of the two infants, that the sale might be confirmed; and we have the deliberate opinion of the distinguished and discriminating judge then presiding, that the land was sold at a fair price: we have all these concurring facts and circumstances in favor of this purchase. There is nothing in this record adverse to this pretension, except the entire loss of the infants’ share of the purchase money. Had the struggle in which we were engaged terminated differently, it is highly probable—nay, it is almost certain—this controversy would never have arisen.
If any proposition can be regarded as well settled, it is, that the propriety of this sale must be tested, and its validity determined, by the circumstances then existing and surrounding the parties. The purchaser can no more be held liable for the loss of the fund by the results of the war than he would be for its loss from the insolvency of a guardian, or the failure of a hank in which the fund was deposited.
In the opinion just delivered by Judge Christian, he has quoted largely from the observations of this court in Walker, ex’or, et als v. Page, 21 Gratt. 636, 644. These observations apply with equal force to the case in hand. It is unnecessary, however, to repeat them here. They, in effect, declare that now after the Confederate currency has perished, that as subsequent events have transpired, it is easy to show that the interests of the infants have not been promoted by a sale of their real estate during the war; and if such considerations could govern the adjudications of this court, then, every such sale in which infants were interested must he annulled. But this is not the true criterion. The only matter for inquiry is: Did the court have jurisdiction of the subject matter; were the proper parties before it; were the proceedings re *536 guiar; was the sale proper under all the circumstances then surrounding the parties. If so, there is no pretence for interfering with the title of an innocent purcbaser, because in the light of subsequent occurrences the sale has proved injudicious and unfortunate for the interests of the infant.
For these reasons, the decree of the Circuit court of the 3d'of April 1873, and of the 16th of June 1874, must be reversed and annulled, and the bill of the appellees dismissed with costs.
The decree was as follows:
This day came the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the decree aforesaid is erroneous. It is therefore decreed and ordered that the same be set aside, vacated and annulled; and that the appellant recover against the appellees Alexander H. McCue and Ellen 8. McCue, next friend of Henry M. McCue, an infant, his costs by him expended in the prosecution of his ■ appeal aforesaid here. And this court proceeding to pronounce such decree as the said Circuit court ought to have rendered: It is further decreed and ordered that the bill of the plaintiffs be dismissed, and that the defendant, Moses Zirkle, recover against the plaintiffs his costs by him about his defence in this behalf expended: Which is ordered to be certified to the said Circuit court of Augusta county.
Decree reversed.