# CHARLESTON.

ROBERTS *et al. v.* COLEMAN *et al.*

Submitted June 16, 1892.—Decided December 3, 1892.

1. ADVANCEMENTS—PARENT AND CHILD—INTENTION.
   Whether a conveyance or transfer of property from parent to child is an advancement depends on the intention of the parent in making it.  (p. 146.)

2. ADVANCEMENT—PARENT AND CHILD—INTENTION—PRESUMPTION.
   A conveyance or transfer of land or property by father to child upon the consideration of love and affection, or merely nominal consideration, is presumed to be intended by the parent as an advancement, until it otherwise appears from the deed or other evidence.  Such a conveyance or transfer to a son-in-law would be considered likewise.  (p. 147.)

3. DECREE—PLEADINGS—ALLEGATIONS—RELIEF.
   There can be no decree against a party when the pleadings contain no allegations and ask no relief as to the cause upon which such decree rests.  (p. 152.)

4. GIFT—DEED—WILLS.
   An instrument transferring property intended to operate only after the death of its maker is testamentary in character, and can not operate as an instrument *inter vivos.*  (p. 151.)

5. PARENT AND CHILD—DEED—GIFT.
   If a child accept from a parent a deed of present conveyance of land, providing that it shall be in full discharge and satisfaction of the child's expectant share in the parent's estate, it will bar

37 143
37 195

37 143
40 158

37 143
41 9
41 277

37 143
43 89
43 367

37 143
44 125
44 729
45 253

37 143
49 184

37 143
e 51 502

37 143
55 662

37 143
56 209
56 211

37 143
f 59 133
59 356
60 606

37 143
f65 614

37 143
66 85

any further claim for participation by such child in such estate, though the child did not sign the deed. (p. 155.)

6. PARENT AND CHILD—DEED—GIFT.

Effect of conditions, obligations, and duties imposed by a deed conveying property upon the grantee who does not sign such deed, but accepts it. (p. 155.)

7. PARTITION—SALE.

Joint owners of land are entitled to have partition in kind, each to have his share allotted to him in severalty, unless such right be waived. A sale can not be decreed in a partition suit unless it appears, by report of commissioner or otherwise by the record, that partition can not be conveniently made, and also that the interests of those interested in the land or its proceeds will be promoted by a sale. (p. 157.)

*O. Johnson, J. H. Riley* and *W. Miller* for appellants:

I.—*The earnings of a married woman belong to her husband.*— 12 W. Va. 353; 31 W. Va. 94.

II.—*The deeds to the Colemans were sales not advancements. To be an advancement conveyance must be voluntary.*—110 Ind. 444; 61 Ind. 85; 57 Pa. St. 461; 52 Ark. 188.

1. To constitute advancement grantor must divest himself of all interest in the property.—24 Miss. 619; 111 Ind. 163; 5 Ves. 721; 10 Cent. Rep. 415.

2. Mere inadequacy of consideration will not convert a sale into an advancement.—1 Mass. 527; 4 Heisk. 209.

3. Solely a question of intention in the grantor.—29 Ind. 249; 32 Ind. 155; 116 Pa. St. 601; 25 W. Va. 760; 119 Ill. 170; 125 Ind. 74; 14 S. E. Rep. 419.

4. In ascertaining the intent of the grantor to determine whether the conveyance was an advancement or otherwise, the surrounding circumstances must be taken into consideration.—14 S. E. Rep. 419; 116 Pa. St. 606; 125 Ind. 74; 110 Ind. 444; 19 Md. 323; 27 Md. 693; 57 Pa. St. 461; 63 Pa. St. 309; 61 Md. 603.

5. One of the strongest proofs of the grantor's *intention* in such cases is the *policy* he adopted in making disposition of his property.—37 Ala. 449; 21 Am. St. Rep. 249; 21 Pa. St. 283; 57 Md. 340; 2 Woem. Am. L. Adm. 1219; 99 N. C. 207.

III.—*The paper called a "conditional bond" was not void.*—3 Wash. 263; 1 Dev. Deeds §§ 292–294; 9 W. Va. 79.

IV.—*The court could enter no personal decree against Mariah Morgan, nor a decree of sale of the corpus of her separate estate to pay a supposed debt.*—13 W. Va. 572; 27 W. Va. 555 ; 36 W. Va. 200.

V.—*No personal decree could be legally given in the case against R. S. Morgan.*—19 W. Va. 364; 25 W. Va. 288; 26 W. Va. 225 ; 33 W. Va. 682; 21 W. Va. 415.

VI.—*The rule as to the weight of the finding of a commissioner has no place here.*

*J. A. Hutchinson* of counsel for appellees cited 14 S. E. Rep. 419; 53 Am. Dec. 496; 18 Am. Dec. 94; 23 Am. Dec. 748; 65 Am. Dec. 726 ; 45 Am. Rep. 88; 19 Md. 323; 27 Md. 693; 25 W. Va. 775; 13 Barb. 1; 61 Barb. 293 ; 33 Tex. 460 ; 57 Md. 340; 13 Lea 626, 633 ; 95 Am. Dec. 630; 31 Ia. 151; 57 Md. 340; 21 Ala. 761 ; 20 Md. 153; 5 Ves. 721; Wms. Ex'rs 150; 5 Watts (Pa.) 80 ; Id. 9; 35 W. Va. 40; 85 Va. 616, 619; 16 S. W. Rep. 369; 1 West. Rep. 382.

*R. F. Fleming,* counsel for appellees cited 1 Am. & Eng. Ency. L. 220, 221; 4 Redf. (N. Y.) 278; 5 Watts 80 ; Id. 9; 13 All. 334 ; 5 Paige 450; 30 Ga. 416; 25 Ga. 352; 63 Ga. 263; 25 W. Va. 774; Id. 760; 14 S. E. Rep. 419; 31 Gratt. 84 ; 3 Head 50; 8 Gill 155; 50 Am. Dec. 669 ; 83 Va. 281; 82 Va. 352 ; Id. 859; 2 Show. Per. Prop. 118; 3 Mur. 494; 2 Dev. 186; 5 Jones L. 413; 36 Am. Rep. 634, 639; 38 W. Va. 340 ; 50 Am. Rep. 510 ; 4 Am. Rep. 174; Metc. 457; Id. 275; 7 Am. Rep. 554, 555 ; 42 Ohio St. 47; 58 Am. Rep. 281; 38 Am. Rep. 620; 99 Ind. 317; 46 F. 713; 76 Va. 617; 1 Sto. Eq. Juris. § 433 ; 5 Am. Rep. 556 ; 7 Am. & Eng. Ency. L. 1; 14 Am. Eng. Ency. L. 639; 12 W. Va. 365 ; 28 W. Va. 379; 14 S. E. Rep. 419.

BRANNON, JUDGE:

This was a chancery suit in the Circuit Court of Jackson county by Nancy Roberts and others against Thomas B. Coleman and others for the purpose of dividing the personal and real estate owned by Thomas Coleman, deceased, among numerous children and grandchildren ; the bill alleging, that various advancements had been made to certain children, and asking, that they be taken into account

in the division. The appellants assign and the appellees cross assign errors.

It is claimed that the court erred in allowing Nancy Roberts three hundred and ninety dollars against the estate for keeping Sarah E. Coleman, her sister, an imbecile daughter of Thomas Coleman, because she was far above majority, and the charge should be against her, not the estate. There was evidence tending to show the father's promise to pay it. The commissioner reports this allowance upon the evidence, and as it depends upon the weight of and inference from it, and the court has confirmed it, we shall not disturb the allowance. It is also said against the allowance that, Nancy Roberts being a married woman, the demand is her husband's, as he is entitled to the wife's earnings, and she has no claim. A wife's earnings, at common-law prior to chapter 109, § 14, Acts 1891, belonged to the husband, *Jones* v. *Reid,* 12 W. Va. 353 ; *Bailey* v. *Gardner,* 31 W. Va. 94 (5 S. E. Rep. 636); but here the promise was made to the wife, and the bill in which the husband is plaintiff, alleges that the promise was made by Thomas Coleman to her, and that she is entitled to the demand. This protects the estate against any claim by him, as does the decree also estop him. If the debt is just, the estate can therefore have no grievance in its being decreed to the wife. If a husband consents that his wife's earnings shall be hers, they are hers, except as to the husband's creditors. Happily, though late, the legislature has changed the hard rule of the common-law giving the wife's earnings to the husband and his creditors, after it had reigned and done much injustice for centuries.

It is next contended that the court erred in holding lands conveyed to two sons, Thomas B. Coleman and Henry R. Coleman, to be advancements. In *McClanahan* v. *McClanahan,* 36 W. Va. 34 (14 S. E. Rep. 419) this Court stated the doctrine that, where a father confers title to real or personal estate upon children, the question whether it was an advancement depends upon the intention of the father, to be ascertained from the evidence and surrounding circumstances, such as the value of the entire estate, the number of children, *etc.* An important element also is the value of the property conferred upon the child.

By deed dated May 15, 1872, Thomas Coleman conveyed to his son Thomas B. Coleman a tract of six hundred and twenty five acres, two roods, and eighty poles of land, stating the consideration to be love and affection and one thousand five hundred dollars for which the grantee executed his bond. By a similar deed of same date Thomas Coleman conveyed to another son, Henry R. Coleman, a tract of four hundred and fifty five acres, one rood and sixty six poles, the consideration stated being love and affection and one thousand five hundred dollars for which said grantee executed his bond. The commissioner fixes the value of the tract conveyed to Thomas B. Coleman at seventeen thousand dollars when conveyed and eleven thousand at the death of his father, in 1890, and that of the tract conveyed to. Henry R. Coleman at fifteen thousand dollars when conveyed, and ten thousand dollars at the death of his father.

By a deed of the same date with the two conveyances to Thomas B. and Henry R. Coleman, they leased to their father during his life the lands conveyed to them, thus making the conveyances to them operate as conveyances of the remainder after his life.

The commissioner ascertained that said decedent's estate at his death amounted to nine thousand nine hundred and sixty two dollars and seventy two cents in personalty, sixteen thousand eight hundred and fifty dollars in realty, and that he had advanced various children to the total value of forty three thousand three hundred and forty dollars, making the whole estate seventy thousand one hundred and fifty nine dollars and sixty two cents.

If these two tracts are not treated as advancements, then the father was guilty of harsh partiality among his children and of crying injustice, because the result would be that these tracts, the very core of his landed estate, would go to those two sons clear, and they still come in for equal shares in the estate left by the father at his death; for he afterwards released without payment the two bonds given in part consideration for the conveyances.

A conveyance of land by a father to a child on a merely nominal or voluntary or good consideration, where the

deed is silent as to the intention, will be presumed to be an advancement until the presumption be repelled. So, too, a transfer of a substantial amount of personalty. *McClanahan* v. *McClanahan, supra; Watkins* v. *Young*, 31 Gratt. 84; 4 Kent, Comm. 418; 1 Tuck. Comm. 181; *McDearman* v. *Hodnett*, 83 Va. 281 (2 S. E. Rep. 643); 2 Lom. Ex'rs. 367; *Parks* v. *Parks*, 19 Md. 323; *Clark* v. *Willson*, 27 Md. 693. The reason of the presumption is that the law infers that the father intends fairness and equality among all his children, and does not intend that one shall keep property of value passed to him, and yet get an equal share in his remaining estate with others equally entitled to his love and bounty, who have received nothing, or not so much as the child advanced. Before enforcing inequality, especially one so glaring as that involved in this case, courts must have strong evidence that the father intended it.

The argument made to us is that these conveyances were sales; but the deeds declare that in part, at least, the conveyances were not for valuable consideration, but moved by love; and, in view of the value of the tracts, love was by far the major consideration. As I see it, the very insertion of the money consideration as a part of and along with that of love tells us that the grantor considered it a sale only to that extent. It disproves a sale.

It is also argued that a policy on the part of the father, as manifested in ten conveyances to other children extending from 1857 down to and including one dating after the conveyances to these two sons, manifests a design not to consider said conveyances to these two sons advancements, and that policy is that in other deeds, when he intended them as advancements, he fixed the value of the land, and declared how much was to be advancement and how much to be paid for.

Another argument is that where he conveyed lands to daughters, when he exacted any money consideration, he neither took bonds nor retained a lien, whereas in the two conveyances to the two sons he did both; and it is urged that this circumstance stamps these conveyances as sales.

These circumstances are not sufficient to overrule the

plausible theory that equality among his children is to be presumed as the father's intention, and the *prima facie* presumption that such a conveyance is an advancement. Considering the total value of the property, real and personal, both that given to his children and that which he still owned at death, about seventy thousand dollars and the number of his children, nine, can we reasonably say, viewing it as a gift, that Thomas Coleman intended to give these sons these tracts, worth twenty one thousand dollars less the two bonds of one thousand five hundred dollars each, as clear gifts, in the sense that they should not be accounted for as advancements, leaving an estate much diminished thereby to be yet divided equally between nine children? Certainly not. Counsel does not even contend for this, but contends that it was a sale. Can we then fairly say that he would sell twenty one thousand dollars worth of land for three thousand dollars? I think not. Mere inadequacy would not make a transfer an advancement where it is a clear sale; but where, as here, the deed itself declares that part of the consideration is only meritorious, the balance valuable, and it is claimed that the transaction is a sale, we may consider inadequacy a circumstance to repel a sale.

It is assigned as error that two sums of one thousand five hundred dollars each were not debited as advancements to Thomas B. and Henry R. Coleman. In the deeds to them the consideration stated is love and affection and one thousand five hundred dollars for which they gave bonds, to be paid at his death, without interest, unless he chose to release such bonds. By a sealed instrument afterwards made between the father and these two sons, he released them from these bonds absolutely. The bonds were to have been paid for the support of an imbecile child, Sarah E. Coleman, and this instrument imposes on the two sons the duty, unless Thomas Coleman should make other arrangements as to this daughter, of becoming guardian to her after her father's death, and managing her interest in his estate, and of seeing, in case of sale of her land, to its proper reinvestment for her use.

It is difficult to arrive at the exact meaning of this and

other badly drawn papers involved in this case, or to do what we can certainly call justice. It is said that when we look at the reserved right in the deed to release the bonds, and their release afterwards, we must conclude that the father intended the whole value of the farms to go as advancement, if the bonds should be released.

But in the solution of this doubtful matter I fall back on that crucial test to determine whether a transfer is an advancement—the intent of the grantor. Did he intend it as an advancement? Now we can safely say that when he made these deeds he did not intend the one thousand five hundred dollars to be advancements, but only intended the residue of the value of the farms as such. Afterwards he did not simply release them, exacting nothing from the debtor. Had he done this, I should say that he intended it as a gift, and it should be charged as an advancement. But he placed upon the sons a burden—a duty to their imbecile sister—a consideration valuable. So the release was on a consideration, repelling the idea of a release as a gift. True, we may not consider the consideration very valuable, though, if the duty be well executed, it would be quite valuable; but that is no matter to us. The old gentleman chose to call and consider it a sufficient consideration for the release. We do not see how the sons can be charged with these two bonds. Nor do we see how Sarah E. Coleman can be.

Next it is claimed that the court erred in holding the conditional bond void. It reads as follows: "Thomas Coleman to Thomas B. Coleman. Bond. This conditional bond made by Thomas Coleman this 4th day of March, 1879. It is hereby ordered of my executor that in case that I should die without conveying two certain pieces of land known as the 'Syhawk Land,' lying on Washington run, and containing about one hundred and twenty acres, more or less, and the other lot is known as the 'Heard Field,' lying on Muse's bottom and Washington run, and containing about sixty five acres, more or less, but the said Thomas Coleman reserves the right during his lifetime to convey the said land to any person or persons he so desires, but it is so understood that the said Thomas Coleman retains and holds full possession of the said two tracts and pieces of land

before described for and during his lifetime ; but it is hereby understood that in case the said Thomas Coleman does not convey the said two lots of land during his lifetime, then in that case this is to be construed as a conveyance to Thomas B. Coleman his lifetime, and then to go to his boys and their heirs; and, if I should not convey the land during my lifetime, I hereby direct by this instrument that my administrators or executors to convey to the said Thomas B. Coleman and his boys and their heirs after my decease.

"Witness the following signature and seal this 4th day of March, 1879.

"THOMAS COLEMAN, [Seal.]"

This instrument is a testamentary paper, not one taking effect as a deed between living men, because it reserves, not simply possession of the land during Coleman's life, but also power to dispose of and convey it as he might choose, thus diverting it from the beneficiary under it, and directs his executors after his death to convey it, thus unequivocally manifesting an intent that it take effect only after his death. True, it does say that, if he should not convey it during life, this instrument is to be deemed a conveyance ; but it is not to so operate until after his death.

A will requires no form, though it does require formality of execution. An instrument in any form to go into effect after death is testamentary in character. 1 Redf. Wills, 170, 171, 271, 272; 1 Tuck. Comm. 399; 1 Lom. Ex'rs, 35 ; Schou. Wills, § 265. If it is the intent that it shall not operate until death, that impresses the act as a testamentary one. By BALDWIN, J., in *Pollock* v. *Glassell*, 2 Gratt. 457; ENGLISH, J., in *McClanahan* v. *McClanahan*, *supra*. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses the intention respecting the posthumous destination of the maker's property ; and, if this appear to be the nature of its contents, any contrary title or name he may give the paper will be disregarded; and therefore deeds poll, deeds of gift, bonds, letters, and other instruments, even agreements between parties, have been often held testamentary: 1 Jarm. Wills, 18, per BALDWIN, J., *supra;* 1 Lom. Ex'rs, 33. If the paper give benefit to the party, without reference to the death of its maker,

it operates, if at all, *inter vivos*, not as a testamentary act. 1
Lomax, Ex'rs, 35. Therefore, this paper can not operate as
a deed between parties alive. Nor can it operate as a will,
because it has not been probated, and is not attested or
proven as holographic, so as to make it take effect as a will.

Next it is claimed that the court erred in decreeing the
sale of the *corpus* of Mariah M. Morgan's land. The debt for
which this land is held liable is five hundred dollars; the
money consideration for the conveyance by Thomas Cole-
man to Mrs. Morgan of one hundred and twenty five acres
of land. Whether there is a lien under which the land can
be sold we shall not say, since there is nothing in the plead-
ings to justify action on it. The bill alleges the conveyance
of this land as an advancement, not mentioning or asking
any relief on the basis of this debt. As a debt, it would be
collectible by the administrators, and they are not plaintiffs,
nor asking relief as to it. The fact that all parties are be-
fore the court does not authorize a decree without allegation
of matter on which to base a decree. *Bland* v. *Stewart*, 35
W. Va. 518 (14 S. E. Rep. 215) and cases cited.

There is another fact adding strength to this view, and
that is that Mrs. Morgan answered, and declined to bring
her land into hotchpot. Had she come in, and anything
had been going to her as a participant in the estate, per-
haps this debt could be set off against her, and only, per-
haps, without some notice; but she elected not to partici-
pate. It was error to decree in this suit against her.

Next it is claimed that it was error to make a personal
decree against R. S. Morgan. The bill alleges that Thomas
Coleman lent R. S. Morgan five hundred and fifty dollars,
but asked no relief against Morgan as to it. Its only pos-
sible pertinency to this case—a case to settle accounts of
the administrators and divide the estate, real and personal
—is to specify it as a part of the assets, and charge the ad-
ministrators with it; not to compel payment by the debtor,
for that is foreign to the suit. Can you make the numer-
ous debtors of an estate parties to a suit to settle the ac-
counts of administrators, and decree against the debtors?
Would it not make the bill multifarious?

But the bill simply specifies this debt as a credit of the

estate, and asks no decree against Morgan. It might be said that it was improper to decree between codefendants, the administrators, and Morgan, as no decree can be made between codefendants unless the equities between them arise out of the pleadings between plaintiffs and defendants, and then only when there is a decree between plaintiffs and defendants. There was no decree between them as to this debt. But I place it on the ground that whether a debt was due from Morgan to the estate was a matter distinct from this suit. Morgan had no interest in the division of the estate. We can not say, therefore, that rights between him and administrators grew out of equities between the plaintiffs and the administrators. His wife had interest in it, and he was not a necessary party, and was only made such for conformity, on account of his wife's presence as a party.

Appellees' cross assignments of error: Nancy Roberts complains that she is charged with one thousand five hundred dollars as an advancement. In 1857 Coleman conveyed to her husband one hundred and seventy eight acres of land, the deed reciting the consideration as ten dollars in cash, and "also fifteen hundred, which I give to my daughter Nancy Roberts, wife of said William M. Roberts, for the love and affection I have for her, but to be an offset for the part of my estate that may be divided hereafter." The contention for Mrs. Roberts is that when her husband then (1853) a young man, was thinking of buying this land of the Smith heirs, her father for several reasons proposed to buy it for him, and did so, her husband furnishing a large sum, which was paid down, and afterwards paying the balance, and that, in fact, her father paid nothing, and that it is unjust to charge her with an advancement of land conveyed to her husband, which in fact belonged to the husband.

The title to about half of the tract was conveyed by some of the Smith heirs to Coleman, and the balance to him and Roberts jointly, and they gave joint notes for purchase-money. These facts tend to show that Coleman had about a three fourths interest. In his conveyance he solemnly declares it an advancement, which is admissible and strong

evidence that it was. Coleman and his son-in-law had been engaged in boating and farming together to a considerable extent, and a few hours before the execution of the deed from Coleman to Roberts the latter made a note for nine hundred dollars to Coleman.

Even if Roberts had furnished money, as he says, from his share in the joint business, to pay on the Smith land, may it not have been adjusted in this settlement? May not the note have entered into this? May not Roberts have released any demand to the land? Roberts's deposition is indefinite, not making his own version strong, and as against the dead man's estate can not be read. This transaction is enshrouded in the mist and uncertainty of thirty or forty years, and we are asked to overthrow the force of the deed declaring the advancement, after its acceptance, nearly forty years ago, upon mere general, oral declarations of Coleman, or conversations, the weakest of all evidence. Roberts, it seems, made objection to receiving the deed in the form it was, whether because of the advacement clause or other cause is not certain; but he accepted it, and thus, as between himself and Coleman, treated the land, or part of it, as Coleman's; and it is not clear that in the face of this his wife could claim to treat it in other light. The law is that a conveyance of land by the wife's father to her husband on the consideration of their relation, for merely good consideration, is an advancement binding on the wife. *Kyle* v. *Conrad*, 25 W. Va. 776, 777 ; *Bruce* v. *Slemp*, 82 Va. 352 ; *McDearman* v. *Hodnett*, 83 Va. 281 (2 S. E. Rep. 643.)

It is true a parent by mere declaration of intention, can not make that an advancement which is not, (2 Minor, Inst. 445); but in one of the cases there cited, holding this doctrine, the judge says the deed is the highest evidence of the intention of the parties and the true character of the transaction. *Cleaver* v. *Kirk*, 3 Metc. (Ky.) 273.

In a case relied upon for Mrs. Roberts, *Hoak* v. *Hoak*, 5 Watts, 80, it was held that book entries of advancements were not conclusive ; but the judge admitted that, where there is a positive direction to charge a given advancement, it has great weight. It is doubtful whether such a positive

charge of an advancement as that in this deed could be neg-
atived, since Coleman could give or withhold as he pleased;
yet, conceding that it might, it would take very strong and
clear evidence to do so. It is purely a question of evidence,
and the circumstances testing the transaction are thirty
years past. The commissioner reported the advancement,
and, the court having confirmed it, under several decisions
we can not, with any conviction of certainty, overrule them,
though it be possible—nay, probable—that justice has not
been done in the matter.

Next is the complaint of Eliza Jane Williams that she
has been wholly excluded from participation in the distri-
bution. Her father in 1872 made her a deed for one hun-
dred and twenty five acres of land, stating it to be in con-
sideration of five thousand dollars, of which one thousand
dollars was to be paid in installments annually, and not to
be accounted for to any of the other heirs, and the residue
"to stand as a set-off in full settlement and satisfaction of
any and all claims and demands of her, the said Eliza Jane
Williams, as well for herself, her heirs and assigns, to the
said Thomas Coleman's estate, directly or indirectly." This
is an estoppel against any further claim for participation in
the assets of the estate. It is based on a valuable consid-
eration—the present conveyance of land—which, but for
such conveyance, the grantee might not in the end get, be-
cause of the grantor's sale or devise to another, or his insol-
vency. It is not the sale of a mere expectancy. The Su-
preme Court of Illinois has several times decided that the
acceptance by a child of a conveyance by the father of land
in full satisfaction of the child's share of the father's estate
is binding on the child. *Galbraith* v. *McLain,* 84 Ill. 379;
*Kershaw* v. *Kershaw,* 102 Ill. 307; *Simpson* v. *Simpson,* 114
Ill. 603 (2 N. E. Rep. 258, and 7 N. E. Rep. 287.) Receipts
for property or money given by an heir in full of his ex-
pectant share have been held binding. *Kenney* v. *Tucker,*
8 Mass. 143; *Bishop* v. *Davenport,* 58 Ill. 105; *Quarles* v.
*Quaries,* 4 Mass. 680 cas. cit.; *Fitch* v. *Fitch,* 8 Pick. 479;
*Nesmith* v. *Dinsmore,* 17 N. H. 515. See elaborate note of
Advancements, 80 Amer. Dec. 559.

It must not be thought that, because the grantee does not

sign a deed, conditions, terms, and obligations imposed on him by it are not binding.   The acceptance of the deed and enjoyment of the estate estop him from denying the covenants and conditions therein to be performed by him.   Indeed, the seal of the grantor is regarded the grantee's seal for this purpose.   It does not fall under the statutes of frauds.

In *Dock Co.* v. *Leavitt*, 54 N. Y. 35, it is held that a grantee in deed poll is bound by covenants therein to be performed by him, and an action of covenant may be maintained thereon against him.

In *Rogers* v. *Fire Co.*, 9 Wend. 618, it was said that "whoever takes an estate under a deed ought, in reason and equity, to be obliged to take it under the terms expressed in the deed."

"If a lease be to A. and B. by indenture, and A. seals a counterpart, and B. agrees to, but does not, seal, yet B. may be charged for covenant broken."   Com. Dig. tit. "Covenant," A. 1.

Judge DENIO said in *Trotter* v. *Hughes*, 12 N. Y. 74: "The acceptance of a conveyance containing a statement that grantee is to pay an incumbrance binds him as effectually as though the deed had been *inter partes*, and executed by the grantee."   To same effect, Shep. Touch. 177 ; 2 Hil. Real Prop. 325, and note; Id. 364; 3 Washb. Real Prop. (3d Ed.) 280 ; Greenl. Cruise, Dig. c. 26, tit. 3233.   See full note collecting authorities at close of *Trotter* v. *Hughes*, 62 Am. Dec. 141.

Next it is alleged as error that Virginia C. Morgan ought to have been charged as an advancement with a tract of land in Tennessee conveyed by Coleman to her husband, R. S. Morgan, the deed reciting the consideration to be one dollar and other good and valuable consideration.   Intention of the grantor is the test of the question whether a given conveyance shall be deemed an advancement or not.

A conveyance to a son-in-law, if an advancement, is an advancement to the wife.   A son-in-law is of such relation to the grantor as that a conveyance to him will bind the wife to account for it as an advancement, if we see that it

was intended as an advancement; as, if the conveyance is love and affection for him and his wife, or the deed states the deed to be on good consideration, or other evidence, it must be on the sole consideration of love and affection. *Stevenson* v. *Martin*, 11 Bush, 485. In this case good consideration is part of the consideration, but it is doubtful if the grantor used it in the technical sense. I observe that each of the many deeds of advancement made by the deceased, expressly declare that they are advancements, or that the consideration is love and affection; but that feature is wanting in this deed—a strong circumstance to repel the idea of advancement, especially as it recites the consideration as valuable.

Next, Nancy Roberts assigns it as error that the land was decreed to be sold, whereas it should have been partitioned in kind. The bill asks partition. There was one imbecile party. The deceased left a great quantity of land in eight tracts, aggregating one thousand three hundred and eighty eight acres, besides a town lot. It is not pretended that this estate is incapable of partition. By common law, partition must be in kind, however inconvenient. 2 Minor, Inst. 421; 3 Pom. Eq. Jur. § 1390.

By statute introduced into the Code of 1849 this inconvenience was remedied by the provision that in any case "in which partition can not conveniently be made, if the interests of those who are entitled to the subject, or its proceeds, will be promoted by a sale," etc., a sale may be decreed. Such is our Code of 1887, (chapter 79, § 3).

Now, remembering that the common law gave right to have partition in kind, and this statute being an innovation upon the common law, and taking away from the owner the right to keep his freehold in kind, to justify a sale in any case, it must come within the statute, and it must appear in some way by the record both that partition can not be conveniently made, and that the interests of the owners will be promoted by sale. Such is the letter of the statute. I think so, as did Judge STAPLES in *Zirkle* v. *McCue*, 26 Gratt. 532.

You must not sell the child's patrimonial freehold away from him forever, unless the necessity for it, deemed suffi-

cient by the legislature, is affirmatively made to appear. It has to the child the *pretium affectionis*. He has affection and attachment for it, because it was owned by his father or mother, and was the scene of the happy days of childhood and youth; and besides, outside of emotion, he may need it for a home, though his share be but an acre. Notwithstanding this statute, *prima facie* partition must be in kind; each parcener being alloted his several share. *Custis* v *Snead*, 12 Gratt. 260 ; *Cox* v *McMullin*, 14 Gratt. 82.

In *Howery* v. *Helms*, 20 Gratt. 1, it is held that in a suit for partition the court has no authority to order a sale of the land, unless it is made to appear, by an inquiry by a commissioner, or otherwise, that a partition can not be made in some of the modes provided by the statute. The mere fact that some, or even a majority, of the parceners prefer a sale will not justify it. The facts required by the statute must appear. Where the record does not show this, a sale is erroneous. I think under the wording of our act, with Chancellor WALWORTH in *Striker* v. *Mott*, 2 Paige, 387, that sale is merely incidental to prevent sacrifice by partition. These views are sustained by the text in Freem. Coten. §§ 536, 537.

Upon these principles, the sale, against Mrs. Roberts's objection, is erroneous. If it were deemed to the interest of the imbecile daughter to sell, that could be done by proceedings separately applicable to it, under the statute relating to that matter ; but the fact is not controlling in this suit.

Decree reversed, and cause remanded, that a decree may be entered according to principles above indicated.

REVERSED. REMANDED.