# CHARLESTON.

PENDRY *v.* COZORT *et al.*

Submitted January 23, 1912. Decided February 25, 1913.

DESCENT AND DISTRIBUTION—*Advancements—Effect.*

> Where all of the heirs have severally received conveyances of land from the ancestor in his life time, each covenanting that the conveyance to him is in full of all that he is ever to have as heir, and the ancestor dies intestate leaving other land, no one of the heirs can cause the conveyances to be brought into hotchpot as advancements, but all must share equally in partitioning the land of which the ancestor died seized. (p. 103).

Appeal from Circuit Court, Wyoming County.

Bill in equity by Flora C. Pendry and another against Manerva J. Cozort and others. From a decree for plaintiffs, defendants appeal.

*Reversed and Decree Here.*

*M. F. Matheny,* for appellants.
*J. H. Gilmore,* for appellees.

ROBINSON, JUDGE:

In the year 1876, William G. Phillips, then the owner of 529 acres of land, conveyed therefrom to his daughter and her husband, plaintiffs in this suit, in consideration of parental love and affection,. a certain boundary, supposed, as the deed recited, to contain 140 acres, more or less. The parcel conveyed was quite generally described by reference to natural monuments. Plainly

the deed is for a particular body of land in gross and not for a specific number of acres. The deed contained this covenant: "It is further understood in this conveyance that the parties of the second part in this deed receive the property hereby conveyed as their entire interest as heirs to the estate of the parties of the first part, in and to the 529 acre survey of land, of which said conveyance is a part." So we observe that plaintiffs accepted the body of land conveyed by the deed as all that the daughter was ever to receive of the 529 acre tract as an heir.

William G. Phillips, who conveyed to plaintiffs as we have stated, had two other children—a son and another daughter. In the year 1879, in consideration of parental love and affection, he conveyed to the son another portion of the 529 acre survey, described by reference to natural monuments, and, as the deed recited, supposed to contain 175 acres, more or less. This deed to the son contained exactly the same covenant which we have recited from the deed to plaintiffs. And in the year 1883, in consideration of parental love and affection, he conveyed to the remaining daughter and her husband another portion of the 529 acre survey, described by reference to natural monuments, and as the deed recited, supposed to contain 164 acres, more or less. This deed to the remaining daughter contained exactly the same covenant which the two other deeds contained.

Thus, by the same manner of conveyance, for the same consideration, and under the same covenant that the land conveyed in each instance was received in full of the share of the son or daughter in the father's estate in the 529 acre survey, William G. Phillips gave each of his children and prospective heirs at law, all of them adults, such particular portions of the large body of land which he owned as he deemed the particular child or heir should have as his share of the same. And in each instance, the child or heir received the same as all that he was ever to receive therefrom. By the acceptance of the deed in each instance, the child or heir to whom the conveyance was made, estopped himself ever to demand a different division of the 529 acre survey.

But after all these conveyances had been made a small parcel of the original tract remained in the ownership of William G. Phillips. He subsequently purchased from one Cook another

parcel, so that he owned about 145 acres at the time of his death in the year 1909. He died intestate, leaving to survive him a widow and the three children to whom we have referred, the latter his only heirs at law.

Now, by the conveyances to which we have referred, it is clear that William G. Phillips gave to his children before his death all that he ever intended them to receive from the 529 acre tract. The deeds in fact say so. He made his own division of the land among all his children in his life time, binding them that they were to receive no more therefrom. So it would seem that he did not intend the small remainder of the tract for them. It is only reasonable to presume that he meant to dispose of it by deed or will before his death. But he did not do so. He died intestate, as we have said, and title to the residue of the large tract, together with title to the parcel purchased from Cook, was by the law thrust upon the three children jointly as his heirs, subject only to dower of the widow therein.

Some time after the death of William G. Phillips, plaintiffs brought this suit for a partition of the real estate of which he died seized and possessed, subject to the assignment of dower therein to the widow, praying that the property conveyed by the deeds which we have mentioned be brought into hotchpot as advancemcents in the making of such partition. Plaintiffs alleged that they did not receive by the deed to them as much land as was conveyed to the others. So the evident object of the suit was that they might get more than the deed had given them. The cause on the bill, answers, and depositions proceeded to a decree directing an assignment of dower, sustaining the claim of plaintiffs that they had not received by the deed to them as much as the others, ordering the three parcels of land conveyed by the deeds to be brought into hotchpot as advancements and referring the cause to a commissioner for the purpose of carrying out the decree. From this decree the son and the other daughter and her husband have appealed. They maintain that the conveyances of land as made to his children by William G. Phillips can not be disturbed; that his heirs are entitled to share equally in the land of which he died seized and possessed; but that in the division thereof no account can be taken of the conveyances made to his children in his life time.

The argument is made by plaintiffs, as appellees, that the decree is not an appealable one. They ask that the appeal be dismissed as improvidently awarded. This point must be overruled. The decree is clearly one adjudicating the principles of the cause.

Were the three conveyances such advancements as are contemplated by Code 1906, ch. 78, sec. 13, which provides for the bringing of advancements into hotchpot? Our answer is that this case does not come under that statute. Though we may denominate each of the conveyances as an advancement, still each of the heirs agreed that the conveyance to him was to be all that he should receive of the land. Every one of the heirs of William G. Phillips so took that which was advanced. All the heirs are on a footing as to the advancements made in the life time of the decedent. Here all the heirs shut themselves out from demanding more. An heir may so debar himself. "If a child accept from a parent a deed of present conveyance of land, providing that it shall be in full discharge and satisfaction of the child's expectant share in the parent's estate, it will bar any further claim for participation by such child in such estate, though the child did not sign the deed." *Roberts* v. *Coleman,* 37 W. Va. 143 ; *Coffman* v. *Coffman,* 41 W. Va. 8. If William G. Phillips had left another heir to whom he had made no conveyance, these three that accepted the deeds would be obliged to let him take all the remaining land. Every one of the heirs is barred out from receiving more, if there was any one to receive it. However, there is no unbarred heir, and the law thrusts the remaining land jointly on all those who otherwise would be barred from receiving it. Then are they not each on the same footing? Can one of them claim that another has been advanced over him? After having covenanted to take no more, are plaintiffs in a position to demand that the estate be brought into hotchpot? May they thus ask more when they covenanted to receive no more?

It is true that William G. Phillips died intestate, and it happens that the law gave the heirs his remaining estate. But merely because of this, plaintiffs can not virtually cause a different division of that which was divided among them all by the father in his life time. Indeed to allow them to do so would be in express violation of the covenant then made by them. The

only equitable view that can be taken is that the division of the land made by William G. Phillips in his life time must stand as he made it and as each heir in accepting a deed then agreed to it, and that the other land thrust on the heirs by the law regardless of their covenant shall be divided as the law which gave it to them directs. That which William G. Phillips gave them in full of his land, he divided; that which the law gives them in full of his remaining land, it will divide.

In *Needles* v. *Needles,* 7 Ohio St. 432, the principle which we apply here is recognized. There it was held: "The statutory provision as to advancements in the descent and distribution of estates, can have no just application, in a case where it is apparent that the testator, who, by his will, had distributed property in different amounts among his children, with the manifest intention of disposing of *all* his estate, unexpectedly, by the omission of a residuary clause in his will died intestate as to a residuum of his estate."

Our statute relating to bringing advancements into hotchpot contemplates the coming of an heir to whom an advancement has been made, into an estate from which he has not barred himself by agreement or covenant, and as to which estate there are other heirs to whom no such advancement as he received has been made. But here all heirs have shared in the advancements, and all have barred themselves from further participation in the estate. It is plain from the deeds themselves that William G. Phillips never intended that the conveyances should ever afterwards be considered as advancements in a further division of his estate. He did not intend them for advancements, such as the statute contemplates. If he intended them to figure in a future settlement or division of his estate, why did he bind the heirs from participation in any future settlement or division?

It is true that a conveyance of land to a child in consideration of love and affection is presumed to be an advancement. But that presumption may be rebutted by showing that it was intended otherwise. In this case the deeds themselves rebut the presumption. They expressly show that it was not intended that the property conveyed by them should ever afterwards figure in relation to a division of the grantor's estate.

The contention of plaintiffs that they may bring the convey-

ances into hotchpot seems to have arisen from the fact that, in these later days of coal surveys by accurate methods, the acreage of the tract conveyed plaintiffs by William G. Phillips falls short to 77 acres, while one of the other tracts conveyed by him is alleged to have more than the supposed acreage named in the deed. Indeed the decree goes so far as to affirm that by mistake the three conveyances were not made equal. There is no basis in the case for this finding. No evidence of such mistake appears. The deeds made by William G. Phillips plainly are conveyances of bodies of land in gross, not conveyances by the acre. Plaintiffs, as well as the others, knew, or must have known, what land they were taking under covenant to ask no greater quantity. By such covenant and the character of their deed, plaintiffs, years ago, negatived claim of mistake or unfair division. Such claim is stale indeed.

The decree, except as far as it provides for the assignment of dower in the 145 acres to the widow, will be reversed, and the cause will be remanded with directions to cause a partition of the 145 acres among the heirs, without reference to the lands conveyed to them by William G. Phillips in his life time.

*Reversed and Remanded.*