BECKHAM & AL.

*v.*

DUNCAN & AL.

(*Supreme Court of Appeals of Virginia, March 22, 1888.*)

[5 S. E. Rep. 690.]

Abatement and Revival—Death of Party.

Plaintiffs were sureties on a sheriff's bond, and as such took an indemnifying bond from defendants. Pending an action on such bond, certain of the plaintiffs died: *held*, that such action could proceed in the name of the survivors, without joining therein the executors of the decedents.

Parties—Original Bill—Amended Bill.*

Where parties are already before the court as defendants to an original bill, and no relief is prayed against them, in the amended bill, it is unnecessary to make them, or their personal representatives, parties to such amended bill.

Partition—Sale—When Ordered.

Where commissioners of sale report to the court that it is impracticable to partition a farm so as to subject the interest of one of the heirs to the liens upon it, and there was no evidence produced to the contrary, it was proper for the court to confirm the report of such commissioners, and decree the sale of the whole farm.

Appeal—Review—Objection Not Taken below.

The appellate court will disregard all errors in a commissioners' report not excepted to in the court below.

Appeal from circuit court, Culpeper county ; George P. Hughes, Judge.

*J. C. Gibson,* for appellants.

*G. D. Gray* and *A. McD. Green,* for appellees.

*See foot-note to Belton *v.* Apperson, 26 Gratt. 207 (Va. Rep. Anno.).

LEWIS, P., delivered the opinion of the court.

This was a suit in the circuit of Culpeper county to subject the real estate of the defendants, of whom Coleman C. Beckham was one, to the satisfaction of the plaintiffs' judgment. The judgment was obtained at the April term, 1875, of the said circuit court, in favor of James M. Duncan and Eldridge G. Duncan, survivors of themselves and William H. Browning, deceased, against Charles Short, Joseph N. Armstrong, Coleman C. Beckham, James Barbour, and William A. Beckham, for $6,612.05, with interest and costs. Upon this judgment an execution of *fi. fa.* was duly issued, and returned "No property," in 1875 ; soon after which the bill in the present case was filed. It appears that, soon after the late war, the said Charles Short qualified as sheriff of Culpeper county, and that the said Duncans and William H. Browning were sureties on his official bond. The said William A. Beckham was one of his deputies. On the 27th of April, 1867, the defendants in the judgment above mentioned executed a bond in the penalty of $15,000, conditioned to indemnify and save harmless the said Duncans and Browning from loss on account of their suretyship as aforesaid. Short, it seems, afterwards defaulted as sheriff, in consequence of which the said Duncans and Browning were compelled to pay a considerable sum of money, and upon this ground the judgment was obtained. The judgment was entered up in conformity with a written agreement, dated the 6th of February, 1875, entered into by and between the said Duncans and the executor of William H. Browning, and the defendants in the judgment, except the said Charles Short, wherein, among other things, it was agreed that the said Coleman C. Beckham would pay the sum of $3,000 towards the discharge of the judgment, when entered up,—that being the sum due by his son, the said W. A. Beckham, as deputy-sheriff, as aforesaid,—and that, after the payment of the said sum, the

defendants would each pay one-sixth of the balance. And then it was agreed as follows: "Should anything be made out of the said Charles Short, or realized on any sum or fee-bills he may surrender, the amount so made or realized is to be credited on said balance so as to inure to the benefit of the parties paying, or bound to pay, said balance under this agreement. And it is further agreed and understood that James Barbour claims that the said William H. Browning, J. M. Duncan, and E. G. Duncan are indebted to him for professional services; and it is agreed that, in the payment of his one-sixth of said balance, he is to have and receive credit for whatever is due him by the said parties for said professional services." The bill was filed on the 8th of August, 1876; and at the following September term a decree was entered directing a master commissioner of the court to ascertain and report the real estate, or interest therein, owned by the defendants, or either of them, subject to the lien of the plaintiffs' judgment, and all other liens on the said real estate, and their respective priorities, etc. The plaintiffs in the bill were the said James M. and Eldridge G. Duncan, suing as "survivors of themselves and William H. Browning, deceased," and the defendants in the judgment above mentioned were made defendants to the bill; and these were the only parties to the bill. The bill avers that the executor of Browning is entitled to a large portion of the said judgment, and that, when the judgment is satisfied, the amount to which he is entitled will be ascertained, and, when determined, will be settled with the executor by the plaintiffs. The accounts ordered were taken and returned, and were duly confirmed; and the said Eldridge G. Duncan having died, the suit was ordered to proceed in the name of the said James M. Duncan as survivor. At the April rules, 1884, the latter filed an amended bill, in which it was averred that, under decrees in the cause, all the real estate of the defendant Coleman C. Beckham had been sold, and the sales

thereof confirmed, except his interest in a certain tract of land, called "Ashland," upon which he resided, containing about 1200 acres, for the sale of which there had been no decree. In respect of this tract it was further averred that he was joint-tenant with his children, James M. Beckham, William A. Beckham, H. C. Beckham, and Fannie T. Barbour, wife of James Barbour ; that of this tract he owned one-half in fee-simple, and was tenant by the curtesy in the other half, which was owned by his said children, subject to his life-estate as tenant by the curtesy. It was also averred that the proceeds of the sales of the lands already made were not more than sufficient to satisfy liens prior to the lien of the plaintiff's judgment, and that it was therefore necessary to sell the interests of the said Coleman C. and William A. Beckham in the said Ashland tract, in order to obtain satisfaction of the plaintiffs' judgment. The above-named children of the said Coleman C. Beckham, and James Barbour, were made defendants to the bill, and its prayer was that partition of the land be made, and that the interests therein of the said Coleman C. and William A. Beckham be sold to satisfy the plaintiffs' judgment. Afterwards a second amended bill was filed, in which it was averred that, since the filing of the amended bill, the said Coleman C. Beckham had departed this life, testate, and that his estate had been committed to the sheriff of Culpeper county for administration, with the will annexed. It was also averred that, under a decree entered pursuant to the prayer of the amended bill, partition of the Ashland tract had been made, whereby one-half of the land had been allotted to the said Coleman C. Beckham, and the other half to his four children above named, and that the commissioners' report of partition had been confirmed. It was also averred that the statement in the first amended bill as to the interests of the said Coleman C. Beckham and his children in the said tract of land was a mistake ; that the interest of the former was three-fourths, and that of the latter one-fourth only.

This was explained in this way :  That the said Coleman C.·
Beckham, and James Beckham, his father-in-law, were
joint tenants of the said land, and that by deed dated the
10th of December, 1846, the said James Beckham conveyed
all his interest therein to the said Coleman C. Beckham and
Mary, his wife ; that the latter had long since been dead,
and that, upon her death, her interest, namely, one-fourth,
descended to her children, who are the children above named;
and that the other three-fourths were owned by the said
Coleman C. Beckham.  It was therefore insisted that the
partition theretofore made and confirmed should be set aside,
and a new partition made according to the rights of the par-
ties.  And the prayer of the bill was that such partition be
made, and that the shares allotted to the estate of the said
Coleman C. Beckham and to the said William A. Beckham,
respectively, be sold to pay the plaintiffs' judgment.  The
personal representative of the said Coleman C. Beckham,
and the wife and infant children of the said James M. Beck-
ham, who were interested under the will of the said Coleman
C. Beckham, were made parties defendant to the bill, with
a prayer that they be required to answer the same.  A
guardian *ad litem* was appointed for the infant defendants,
who duly filed their answer.  A decree was also entered
appointing commissioners to make a new partition as prayed
for, who proceeded to act, and duly returned their report.
They reported that they had allotted three-fourths of the
land to the estate of Coleman C. Beckham, and the remain-
ing fourth to his said children, but that they found it imprac-
ticable to subdivide the one-fourth so allotted.  To this
report the said James M. Beckham filed three exceptions.
His wife, Julia M. Beckham, also excepted to the report on
the general ground that it worked injustice to her and her
children as devisees of the said Coleman C. Beckham.  She
also demurred to the second amended bill, and filed an an-
swer thereto.  The main grounds of defense set up in the

1 Va Dec—43

answer were that the plaintiffs' judgment, as well as the most of the debts reported as liens in the cause, were due by the said Coleman C. Beckham in his lifetime, as surety, and therefore that the plaintiffs, and other creditors in like case with them, ought to be required to exhaust their remedies against the principal debtor before proceeding against the estate of the surety ; and also because collections of money in various pending suits had been or would be made, which were applicable to the payment of some of the debts reported in this suit, and that an account thereof ought to be taken.   It was also averred, in the answer, that the said Coleman C. Beckham died possessed of choses in action and other personalty, and that no settlement of the estate had been made or ordered.   This point, however, is not insisted upon here, and is without merit, because, as was decided in Price v. Thrash, 30 Gratt. 515, the remedy in equity against the real estate is not dependent upon inadequacy of the legal remedy to satisfy the judgment out of the personal estate, or the insufficiency of such estate for that purpose.   2 Lomax, Ex'rs, 242.   It was also insisted, in the answer, that no further sales of the lands of which the said Coleman C. Beckham died seized were necessary.   When the cause came on to be heard, the court overruled the demurrer to the bill, and also the exceptions to the report of partition, and decreed a sale of the whole of Ashland ; whereupon this appeal was taken.

The first assignment of error is that the original bill is demurrable, because it does not make the executor of William H. Browning, deceased, a party to the suit.   No demurrer, however, was filed to the bill in the lower court, nor is the bill demurrable on the ground alleged.   The plaintiffs, as survivors of themselves and William H. Browning, deceased, were entitled to maintain an action on the bond of indemnity, and to collect the judgment when obtained.   3 Rob. (New) Pr. 91, 549.

The second assignment of error is that the decree for an account of the 16th of September, 1876, was premature; and that said decree is also erroneous in not providing for an account of fee-bills to be surrendered by Charles Short, and in not directing an account to ascertain the amount due James Barbour by William H. Browning, James H. Duncan, and Eldridge G. Duncan. A sufficient answer to this assignment is that no such questions were raised in the court below. It has not been claimed, in the progress of the cause, by James Barbour, or any other person, that anything was due him by Browning's estate and the Duncans, or that there were any fee-bills in Short's possession to be surrendered.

The third assignment of error is that the decree of the 6th of December, 1877, confirming Commissioner Stallard's account of liens is erroneous, because said account was taken without sufficient notice, and did not embrace the real estate of the defendants Short, Barbour, and William A. Beckham. It is contended that Short was the principal debtor, and that the other defendants in the original bill were sureties; and therefore that the plaintiffs ought to have been compelled to exhaust their remedies against Short before subjecting the estates of the sureties. As to the objection for want of notice, it is sufficient to say that it does not appear from the record, as it comes to us, that due notice was not given. No such objection appears to have been made below, though the decree of confirmation was entered nearly 10 years before this appeal was taken; nor does it appear that, throughout the progress of the litigation, there was any suggestion that the defendants Short and Barbour owned, or were entitled to, any interest in real estate whatever; and, in the condition of the record as it is, we must presume the contrary. The interest of the defendant William A. Beckham in the Ashland tract was reported, and presumably this was all that he had. Moreover, it does not appear, from the record, that Coleman C. Beckham was ever a surety for Short. It

would seem that he signed the written agreement upon which the plaintiffs' judgment was obtained, as a principal debtor, and not as surety. At all events, Short was not a party to that agreement ; and it appears to have been executed by Coleman C. Beckham to make good the liability of his son, William A. Beckham, who, the agreement recites, was "justly chargeable as deputy for said Short, sheriff, with the sum of three thousand dollars," and also to discharge his liability as one of the obligors of the indemnifying bond to the Duncans and William H. Browning, mentioned in the bill or in the subsequent proceedings. It is unnecessary, therefore, to go into the question as to how far a court of equity will compel the creditor to pursue the principal debtor before resorting to the surety. It may be as well, however, to say that the general rule is that the creditor is under no obligation to look to the principal debtor, or to his property, and is not bound to exhaust his remedies against the latter, before resorting to the surety. Relief in accordance with the equity of the parties *inter se* will only be granted where all the parties are before the court, and where to lay the burden first upon the principal debtor, or his property, will not work material delay or injury to the creditor. This is the well-established doctrine of courts of equity repeatedly recognized by this court. Meade v. Grigsby's Adm'rs, 26 Gratt. 612 ; Horton v. Bond, 28 Gratt. 815 ; Penn v. Ingles, 10 Va. Law J. 531.

The fourth assignment of error is that the amended bill No. 1 is defective for non-joinder of necessary parties. It is contended that the personal representatives of William H. Browning and Eldridge G. Duncan, then deceased, and Charles Short and Joseph N. Armstrong, ought to have been made defendants to the bill, and that it was error to proceed without making them parties. We do not think so. The personal representatives were not necessary parties, because, as the survivor of himself and Browning and El-

dridge G. Duncan, it was competent for James M. Duncan to continue the prosecution of the suit in his own name (1 Bart. Ch. Pr. p. 166) ; and, as to Short and Armstrong, they were already before the court as defendants to the original bill, and no relief as against them was prayed in the amended bill. There is no reason, therefore, why they should have been formally made parties to the amended bill, and required to answer it.

The same objection is renewed in the fifth assignment of error, which relates to amended bill No. 2, and is equally untenable in respect to that bill. It is also contended in this connection that the last-mentioned bill is demurrable because it avers that, under the conveyance from James Beckham, the said Coleman C. Beckham and Mary, his wife, became joint tenants, and at the death of the latter her one-fourth interest descended to her children. An office copy of the deed from James Beckham to the said grantees is exhibited with the second amended bill, which deed is dated the 10th of December, 1846, and which conveyed the one-half undivided interest of the said grantor in Ashland to the said grantees ; and it may be conceded that the averment in the bill as to the nature of the interest conveyed by that deed is inaccurate. In Thornton v. Thornton, 3 Rand. (Va.) 179, decided in 1825, it was held that the conveyance or devise of an estate to husband and wife did not create a joint ten-ancy in the technical sense of that term, but that each party took the entirety, and that the survivor took the whole, not by survivorship but by virtue of the original conveyance. And the present case is within the influence of that decision, as our statute abolishing entireties as to estates of inherit-ance applies only to estates conveyed or devised since the 1st July, 1850. Code 1873, c. 112, § 18 ; 2 Minor, Inst. 411. But this concession does not help the case of the appel-lants. It only shows that the plaintiffs claimed less in the court below than they were entitled to, which, so far from

prejudicing the appellants, was to their advantage, and therefore constitutes no ground for a reversal of the decree in their favor.

The sixth assignment of error is that the decree of the 4th of June, 1886, ought to have been set aside for the reasons set forth in the petition to rehear the same.   In respect to this assignment it is sufficient to say that all the objections to the decree which appear to have any merit, as set forth in the petition for rehearing, were obviated by a subsequent decree, and need not be here considered.

The only remaining assignment of error relates to the decree of the 18th of September, 1886, which is the last decree entered in the cause.   The objections to this decree are these: (1) That it confirmed the report of Master Commissioner Stallard of the 20th of February, 1886, which, it is now alleged, was taken without notice ; (2) that it confirmed the report of partition ; and (3) that it decreed a sale of Ashland upon the terms therein prescribed.   There is nothing in the record upon which these objections, or any one of them, can be sustained.   In her answer to the second amended bill, Mrs. Julia M. Beckham, one of the appellants, objected to the proceedings on various grounds, and, among other things, prayed that her answer ''be taken as and for exceptions to the commissioners' report of the 20th of February, 1886 ;'' but no objection in the answer was made to the report on the ground that it had been taken without due notice, and, apart from the answer, there is no exception to the report on any ground, so that the objection, now for the first time urged in the appellate court, comes too late.   Nor was any evidence offered in the court below tending to show that the report of the commissioners appointed to divide the land ought not to have been confirmed.   The commissioners were presumably selected with reference to their supposed qualifications for the service to be performed, and, in their report to the court, made upon oath, they are very emphatic

in the opinion that it was impracticable to subdivide the one-fourth interest in Ashland which they had allotted to the children of Coleman C. Beckham, and they gave the reasons for their conclusion, which, in the absence of evidence to the contrary, must be accepted as sound.   It is true the general rule is that, in the partition of land, each cotenant has the right to have his share assigned to him in severalty. But this is only where such allotment can be made without material injury to the interests of all concerned ; and in the present case the facts disclosed by the record justified, and even required, a departure from the general rule, since it appears that a sale of the interest of one of the children was necessary to satisfy the liens upon it, and a subdivision was impracticable.   It was proper, therefore, for the court to confirm the report of the commissioners, and to direct a sale of the whole tract.   Code 1873, c. 120, § 3 ; Curtis v. Snead, 12 Gratt. 260 ; Howery v. Helms, 20 Gratt. 1.   It appears, moreover, that of the four children one only excepted to the report.   Two of them expressly united in the prayer of the original and amended bills, and the fourth is not complaining.   The decree directed the land to be sold on the terms of one-third of the purchase money to be paid in cash, the balance to be paid in three equal installments, on a credit of one, two, and three years, with interest from the day of sale, to be secured by the bonds of the purchaser, and the retention of the legal title until full payment of the purchase money.   These terms are fair and reasonable, and no reasons in support of the contrary view have been assigned in this court, or doubtless can be.

We find no error in the decrees complained of, and the same must be affirmed.