## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

JACKSON AND OTHERS v. JACKSON AND OTHERS.

November 18, 1909.

Absent, Buchanan, J.

1. PARTITION—*How Made—Allotment of Part and Sale of Residue.*
   The whole subject of the partition of real estate is regulated by
   statute in this State. Under the provision of the statute allow-
   ing "allotment of part and sale of the residue," the part allot-
   ted must (in the absence of consent of parties) be divided in
   equal portions, as near as may be, among all those entitled
   to share in it, and the residue be sold and the proceeds divided
   according to the respective rights of the parties. It is not per-
   missible to allot in kind to some, and sell the shares of others
   for the purpose of distribution.

Appeal from a decree of the Circuit Court of Augusta county.
Bill filed by Jesse Jackson for partition of real estate descended
from his father. Exceptions were filed to the report of com-
missioners making partition by the complainant and several of
the defendants. These exceptions were overruled, and the ex-
ceptors appeal.

*Reversed.*

The opinion states the case.

*Quarles & Pilson,* for the appellants.

*John B. Cochran,* for the appellees.

KEITH, P., delivered the opinion of the court.

The object of the bill in this case was to have partition of the
real estate of Thomas J. Jackson, deceased, among his seven
children; and by decree of the October term, 1908, Commis-

sioner Gordon was directed to inquire "whether the real property in the bill mentioned can be conveniently divided in kind between the several parties entitled to share therein, any two or more of the parties, if they so elect, to have their shares laid off together when partition may be conveniently made in that way. If said real estate cannot be conveniently divided in kind, whether any party will take the entire property and pay therefor to the other parties such sums of money as their interests therein may entitle them to; and, if the same cannot be conveniently divided in kind, if no party will take the entire property and pay the others for their shares, whether the interest of those who are entitled to the said property, or its proceeds, will be promoted by a sale of the entire property, or by the allotment of part and sale of the residue."

The commissioner reported the principles covering the case as follows: "That there must be partition in kind among the tenants (where such partition is specifically insisted on), if such partition be practicable by any reasonable and fair device which commends itself to the conscience of the court as equalizing the several interests; and that, therefore, the two defendants, owners of the three-sevenths interests, are entitled to have their three shares laid off to them together, if this can be done with due regard to the rights of the other tenants, either by setting off a smaller quantity of more valuable land against a larger quantity of less valuable land, or by equalizing a more valuable portion by a charge upon it in favor of those getting the less valuable portion; and this, too, independent of the question of whether the court will order the sale of the interests of the tenants owning the other four-sevenths or not."

It appears that one of the cotenants, Ernest M. Jackson, sold his undivided interest to his brother, J. N. Jackson, who became entitled to two-sevenths of the entire subject; and thus J. N. and John W. Jackson, his brother, became entitled to three-sevenths, which they were willing to have set apart in one parcel.

To this report of the commissioner exceptions were filed by appellants, and the court, overruling the exceptions, confirmed the report, and by its decree directed five commissioners to go upon the land and lay off the three-sevenths belonging to J. N. and John W. Jackson in one parcel, if that could be done without injury to the residue of the tract, having regard to the quantity, quality and value, and to partition the remaining four-sevenths into four equal parts, and assign one of said four-sevenths to each of the four remaining heirs, Jesse, Winifred, Harriet and Caroline Jackson; but if the commissioners should find it impracticable to assign the three-sevenths to J. N. and John W. Jackson without doing injury to the residue of the tract, they are required to report the facts upon which their opinion is based to the court. And if the commissioners find it practicable, and it can be conveniently done, to assign said three-sevenths to J. N. and John W. Jackson without doing injury to the rest of said tract, they are to make said assignment, but if they find it impracticable to partition the remaining four-sevenths into four equal parts, having regard to quality, quantity and value, and are of opinion that it would promote the interest of said four heirs to make sale of their four-sevenths, then the commissioners will report the facts upon which their opinion is based to the court, and what in their opinion is the fee simple value of the whole of the real estate of which T. J. Jackson died seised and possessed."

The commissioners reported as follows: "We do not think it would be to the best interest of all parties interested in said land to make sale of the same as a whole, as the land can easily be divided into two parts without detriment to either share, by assigning to J. N. and John W. Jackson three-sevenths," and four-sevenths to the four remaining heirs; that the farm is supposed to contain 186 acres, and they assign to J. N. and John W. Jackson three-sevenths in value, containing about sixty-five acres, and the other four-sevenths, or 121 acres, were assigned to Jesse, Winifred, Harriet and Caroline Jackson. They fur-

ther reported that the four-sevenths interests thus assigned were not susceptible of division, but could be sold as a whole to a better advantage to the parties to whom this share was allotted.

To this report Jesse Jackson filed exceptions. We shall only consider the fourth, as it brings fairly before the court the issue of law to be determined in this controversy. The exception is in these words: "Because the commissioners allotted part of the farm to some of the parties and recommended a sale of the residue for the benefit of the other parties, which is in violation of the statute."

The whole subject is regulated by statute, which will be found in chapter 114 of the Code of 1904.

By section 2563 it is provided that "Any two or more of the parties, if they so elect, may have their shares laid off together when partition can be conveniently made in that way."

And section 2564, or so much of it as is pertinent to this case, provides that "When partition cannot be conveniently made, the entire subject may be allotted to any party who will accept it, and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case now pending or hereafter brought, in which partition cannot be conveniently made, if the interests of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court . . . may order such sale, or such sale and allotment, and make distribution of the proceeds of sale, according to the respective rights of those entitled."

This controversy turns upon the interpretation to be given to the words "allotment of part and sale of the residue." In the case before us there were seven shares originally. Three of these shares could be laid off together in kind; the other four shares could be laid off together, but were not susceptible of partition in severalty among the four to whom they were to be assigned. The circuit court was of opinion, and so decreed, that under the statute it could allot three shares to the two parties entitled to them in kind, and as the other four shares were

not susceptible of partition, they could be sold and the proceeds divided among those entitled; but we are of opinion that the language of the statute does not bear that construction. When it speaks of an allotment of part, it is intended that that portion of the subject of which partition can be conveniently made in kind should be divided in equal portions, as near as may be, among all those who are entitled to share in the partition; and that, in order to reach equality among those entitled, the court has the power in a proper case to charge the more valuable shares with a sum payable to those to whom the less valuable shares may be allotted; and that so much of the subject as cannot be conveniently partitioned must be sold and the proceeds divided according to the respective rights of the parties.

1 Minor on Real Property, sec. 963, says that when partition cannot conveniently be made otherwise, the entire subject may be allotted to any party who will accept it, and pay therefor to the other parties such sums of money as their interests therein may require; or the entire subject may be sold and the proceeds divided; or part may be allotted and the residue sold; and any two or more of the parties, if they so elect, may have their shares laid off together, when partition may be conveniently made in that way; sale of the entire subject, or the allotment of part and the sale of the residue, and the distribution of the proceeds of sale may be made by the court according to the respective rights of those entitled; and where partition in severalty is impracticable, or cannot be made without impairing the portions of some or all of the parties, then nothing remains but to resort to one or other of the devices above stated, as, for example, by dividing the property into shares of unequal value, and correcting the inequality by charging money on the more valuable in favor of the less valuable portion, or by a sale of the whole and a distribution of the proceeds.

In Hogg's Eq. Principles, sec. 372, it is said: "Where the court does determine upon a sale of the land, it should be sold as a whole (in the absence of the consent of the parties in in-

terest to the contrary), as it would not be just to sell as to some and decree a partition as to others." And this view is held by the Supreme Court of West Virginia in *Stewart* v. *Tenant,* 52 W. Va. 559, 44 S. E. 223.

In *Zirkle* v. *McCue,* 26 Gratt., 517, Judge Staples uses the following language: "The commissioners do not partition the residue of the tract among the heirs according to their respective interests—they do not recommend it—they do not intimate that it could be conveniently done. What they did do was to divide the tract into two parcels of two hundred and forty acres, each equal in value, these parcels to be sold, or one of them to be allotted to four heirs, who may unite in taking it as coparceners, and the other to be disposed of in the same way. Of course this plan was not feasible unless all the parties consented to its adoption. They did not consent to it, and, of course, it was abandoned."

In *Beckham* v. *Duncan,* 1 Va. Dec., 669, 5 S. E. 690, it appears that a tract of land was to be partitioned, three-fourths of which belonged to Coleman C. Beckham, and the remaining one-fourth belonged to his children. Commissioners were appointed to make partition of the land, and they reported that they had allotted three-fourths of the estate to Coleman C. Beckham and the remaining one-fourth to his children, but they found it impracticable to subdivide the one-fourth so allotted. Exceptions were taken to this report, which need not be specifically stated. The court overruled these exceptions and decreed a sale of the whole of the real estate. So much of the opinion as throws light upon the subject before us is as follows: "The commissioners presumably were selected with reference to their supposed qualifications for the service to be performed, and in their report to the court, made upon oath, they are very emphatic in the opinion that it was impracticable to subdivide the one-fourth interest in Ashland which they had allotted to the children of Coleman C. Beckham, and they gave the reasons for their conclusion, which, in the absence of evidence to the contrary, must

be accepted as sound. It is true the general rule is that, in the partition of land each cotenant has the right to have his share assigned to him in severalty. But this is only where such allotment can be made without material injury to the interests of all concerned; and in the present case the facts disclosed by the record justified, and even required, a departure from the general rule, since it appears that a sale of the interest of one of the children was necessary to satisfy the liens upon it, and a subdivision was impracticable. It was proper, therefore, for the court to confirm the report of the commissioners, and to direct a sale of the whole tract."

We are, therefore, of opinion that while under our statute power is expressly given to make "allotment of part and sale of the residue," the true rule, where the element of consent does not appear, is to divide the part allotted among all those entitled to share in it, and to sell the residue and distribute the proceeds of sale according to the rights of those entitled.

The decree of the circuit court must, therefore, be reversed.

*Reversed.*