# Richmond.

J. B. BRIDGE v. J. C. SNEAD AND MELISSA SNEAD.

November 15, 1928.

Absent, Chichester and Holt, JJ.

The opinion states the case.

*G. H. Branaman*, for the appellant.

*Kerr & Churchman* and *Floridus Crosby*, for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

This is a suit under the statute for partition of a tract of land containing about thirty-one acres, instituted by J. C. Snead, who owns three-fifths thereof, and his wife, Melissa Snead, who owns one-fifth thereof, against J. B. Bridge, the appellant, who owns the other one-fifth. Code, sections 5279, 5280 and 5281, amended Acts 1928, page 1012. The issue raised is whether the land should be divided in kind, or sold for division. The trial court directed a sale of the property, and this appeal was allowed from that decree.

By the first decree of December 13, 1926, commissioners were appointed to go upon the land and to ascertain and report whether or not it was susceptible of division in kind. This commission never reported. Thereafter, on March 28, 1927, the first decree was annulled and another commission appointed with direction to divide the land among the interested parties, if possible, and if not then "by consent of the parties in interest" the commissioners were required to report the facts upon which they based their opinion, and also whether the interest of those who are entitled to the said real estate or its proceeds would be promoted by a sale of the entire tract of land. They reported that they had carefully examined the property and that there was no substantial difference in

the quality of the land; that "the advantages of highway, etc., can be given to each parcel;" that they believed that it could be physically divided into five parts of equal value, one part of which would be allotted to J. B. Bridge, three parts to J. C. Snead and one part to Melissa Snead, his wife. They then proceed: "We believe, however, that a division such as we have described in the foregoing paragraph would depreciate the value of the entire tract to this extent: That if each of the separate fifths were sold they would not bring as much money in the aggregate as if the land remained as a whole to be sold that way. This being true, we believe that it would be to the best interest of all parties concerned in this case to sell the land as a whole and divide the proceeds among them. If this were done, in our opinion, they would have more money than if the land were divided, as we have suggested in the first paragraph, and each one sold his separate parcel."

The report proceeds further thus: "We desire to give a little more fully our reasons for thinking the land divided physically into five equal parts would not be worth as much in the aggregate as if it were undivided and sold. The several parcels would be so small that none of them would contain sufficient ground to justify anybody buying it as a home and having enough ground to farm. This is our reason for saying that the value of the entire property would be greatly depreciated if it were divided physically into five parcels."

We pause in this recital of the facts to observe that the commissioners, or the draftsman of their report, were unduly concerned over a question which was not submitted and could not possibly arise in this case, for it is not suggested that the property should

be divided into five parcels. If conveniently divisible, all the commission could properly do was to divide it physically into three parcels, three-fifths in value to J. C. Snead, one-fifth to his wife, Melissa Snead, and the other one-fifth to Bridge.

Much of the argument of counsel for the appellees seems to be based upon this finding of the commission, which finding has not proper place in this record.

Bridge, the defendant, excepted to this report, first, because the commissioners returned no plat or survey with their report, and because they failed to complete their work and divide the land in kind between the parties entitled thereto. The trial court sustained these exceptions and directed the commissioners to proceed to execute the former decree—that is, to divide the land and assign three-fifths of it to J. C. Snead, one-fifth to Melissa Snead, and one-fifth to J. B. Bridge, and to file with their report a survey and plat.

Thereafter, by report dated December 21, 1927, which was filed December 28, 1927, the commissioners executed that decree, assigning lot No. 1, containing sixteen and twenty-two one hundredths acres of land together with the residence and a valuable spring to J. C. Snead. The land so assigned adjoins other land of J. C. Snead. The second parcel, one-fifth in value, was assigned to Melissa Snead. It adjoined lot No. 1, assigned to her husband, contained seven acres, and upon this tract the stable was located. The third parcel, one-fifth in value, containing eight acres, was assigned to Bridge. It adjoins the land assigned to Melissa Snead and lies between it and a larger tract of land owned and occupied by Bridge. They returned a plat with their report, upon which as well as in the report itself the courses and distances appear.

Upon the filing of this report the complainants, J. C. Snead and Melissa Snead, filed a petition for rehearing, which may be considered in two aspects—that is, both as a petition for rehearing and as an exception to the latter report. They object to the report and among the allegations is this: They say that the commissioners who were first appointed, whose appointment had been thereafter annulled, had recommended a sale of the property because of an alleged charge of $200.00 resting on the land, and on account of the fact that partition would not be practical in view of the small size of the tract.

As to this averment, it is only necessary to say that because this report was never filed and the commissioners' appointment was annulled, it has no place in this record; and as to the alleged charge of $200.00 it need only be said that partition in kind will not affect the rights of the owners of this charge, if it be now a valid lien upon the property. It is pertinent to say that before a sale could have been properly made, the validity and precise amount of this lien should have been first determined. No further allusion will be made to this feature of the case.

The petition for rehearing then proceeds to recite the subsequent proceedings, including the appointment of the new commissioners, and the substance of their original and supplemental reports. They then refer to the character of the property as being located in the mountains; that it is very steep in some places, and that the parcels as laid off are long narrow strips, each crossing the county road and a creek, and thus rendering the fencing and general utilization of the land difficult and expensive. They allege that the tract allotted to Melissa Snead is a strip about 224 feet wide and 1,364 feet long, containing seven acres, crossed by a

creek and county road and lying between the property assigned to J. C. Snead and J. B. Bridge, and that it is apparent from the plat that in order for her to fence, cultivate and utilize such a small parcel of land it will be necessary to fence it in two lots; and therefore they pray that the court will order a sale of the property to the highest bidder.

Thereupon, without further evidence, the decree of sale was entered.

The petition for appeal advances these three reasons in support of the contention that this decree of sale is erroneous: First, that the court is without authority to decree a sale of land for partition if it is practicable to divide it in kind; second, that the record does not show that it is inconvenient to divide the land in kind; and, third, that in order to justify a sale of the property for partition the record should show that the interests of the owners would be promoted by a sale of the entire subject.

Among the reasons in support of the view that there should have been no sale under the facts shown, and that a sale is against his interest, the appellant shows that being the owner of an adjacent tract, he can attach his portion of the tract in question to his larger farm and desires to do so, because he will thereby gain access to a public road over his own land, instead of having to use the land of other persons in order to reach the public road, which the report to the commissioners shows runs through the tract in which he has a one-fifth interest. He likewise avers that it can be no serious inconvenience to the owners of the other four-fifths to attach their portion of the property allotted to them to the adjacent land of J. C. Snead.

The fundamental rule in such cases, which in this jurisdiction has been accepted but not discussed at

length, is thus stated by Dr. Lile: "If the property be divisible in kind, any co-owner has the right to insist that partition be so made. The majority of the co-owners in such case may not insist on a sale against the will of any of their fellows." Lile's Eq. Pl. & Pr., section 389, page 196.

█ The primary question in suits for partition is whether or not a division in kind is convenient, practicable and for the best interest of the parties; the secondary question is, whether their interest will be promoted by a sale in whole or in part.

In Custis v. Snead, 12 Gratt. (53 Va.) 262, this appears: "As in a proceeding at law by writ of partition, it is the regular course to assign to each parcener his part in severalty, Litt., section 276, Coke 179 b, from analogy thereto; the same course should, as a general rule, be observed where the proceeding is by bill in chancery. That such partition of the whole subject is more likely to be equal and just than where a partition is made, as the commissioners will have an accurate view of the whole subject and by dividing it into different parts will be furnished with the means of making a fair comparison, and can correct inequalities. If from the condition of the subject or the parties, the interest of the parties in general would, in any case, be promoted by pursuing a different course, the facts justifying a departure from the rule should, at least where the rights of infants are involved, be disclosed by the report, or otherwise appear, to enable the court to judge whether their interests would be affected injuriously or not."

We find this statement in Cox v. McMullin, 14 Gratt. (55 Va.) 91: "The law of partition of real estate requires that each part owner shall have in severalty a part equal to his interest in the whole

subject, if practicable, having a due regard to the interests of all concerned."

In *Howery* v. *Helms and Others*, 20 Gratt. (61 Va.) 7, the rule is assumed, and thus expressed: "In a suit for the partition of land, it is the duty of the court, before making a decree for a sale, to ascertain by an enquiry by a commissioner, or otherwise, that partition cannot be made in some of the modes provided by the second and third sections of chapter one hundred and twenty-four of the Code, without a sale."

So also, in *Zirkle* v. *McCue*, 26 Gratt. (67 Va.) 532, it is said: "Under this section, the case must be one in which partition cannot be conveniently made, and it must appear that the interests of the parties will be promoted by a sale of the property. These concurring circumstances are necessary to warrant a decree for such sale."

This is said incidentally in *Virginia Iron, Coal & Coke Co.* v. *Roberts*, 103 Va. 685, 49 S. E. 987: "In that case (referring to a related case) there was no necessity for sale for the purpose of partition, and none was made or could have been made therein without the consent of the parties." Citing *Howery* v. *Helms*, *supra*.

In *Jackson* v. *Jackson*, 110 Va. 398, 66 S. E. 721, this court quotes with approval from *Beckham* v. *Duncan*, 1 Va. Dec. 669, 5 S. E. 690: "It is true the general rule is that in the partition of land each co-tenent has the right to have his share assigned to him in severalty. But this is only where such allotment can be made without material injury to the interests of all concerned;   *  *."

The West Virginia court has thus stated the underlying reason, in *Roberts* v. *Coleman*, 37 W. Va. 157, 16 S. E. 486: "Now, remembering that the common law

gave right to have partition in kind, and this statute being an innovation upon the common law, and taking away from the owner the right to keep his freehold in kind, to justify a sale in any case, it must come within the statute, and it must appear in some way by the record both that partition cannot be conveniently made, and that the interests of the owners will be promoted by sale. Such is the letter of the statute. I think so, as did Judge Staples in *Zirkle* v. *McCue*, 26 Gratt. [67 Va.] 532. * * * Notwithstanding this statute, *prima facie*, partition must be in kind; each parcener being allotted his several share. *Custis* v. *Snead*, 12 Gratt. [53 Va.] 260; *Cox* v. *McMullin*, 14 Gratt. [55 Va.] 82.

"In *Howery* v. *Helms*, 20 Gratt. [61 Va.] 1, it is held that in a suit for partition the court has no authority to order a sale of the land, unless it is made to appear, by an inquiry by a commissioner, or otherwise, that a partition cannot be made in some of the modes provided by the statute. The mere fact that some, or even a majority, of the parceners prefer a sale will not justify it. The facts required by the statute must appear. Where the record does not show this, a sale is erroneous. I think under the working of our act, with Chancellor Walworth in *Striker* v. *Mott*, 2 Paige [N. Y.] 387, [22 Am. Dec. 646], that sale is merely incidental to prevent sacrifice by partition. These views are sustained by the text in Freem. Coten., sections 536, 537."

Similar conclusions are stated in *Croston* v. *Male*, 56 W. Va. 205, 49 S. E. 136, 107 Am. St. Rep. 918.

This case is followed in *Herold* v. *Craig*, 59 W. Va. 356, 53 S. E. 466, the court saying this: "Was the decree complained of justified by the state of the record at the time of its entry? Issues were made between

the plaintiffs and the defendant as to whether or not the lots were susceptible of convenient partition, and as to whether or not the interests of these entitled to the lots, or to the proceeds thereof, will be promoted by a sale and distribution. It is settled by a long line of decisions, in the State and in Virginia, that the common law right of partition in kind cannot be refused because of the provisions of our statute, section 3, chapter 79, Code [1899], unless it affirmatively appears that partition cannot be conveniently made, and that the interests of the parties will be promoted by a sale of the property." * * * "These two essential facts must affirmatively appear in the record before a decree of sale can be entered."

Applying these principles to this case, we conclude that the decree directing a sale of the entire tract was erroneous because against the interests of the appellant and unnecessary for the preservation of the rights of the appellees. The distinctive facts of each case properly enter into the determination of the question, because the interest of all of the owners should be the first consideration of the court. As has been stated, it appears that the appellant, Bridge, owns and occupies a larger tract of land immediately adjacent to the eight acres of this tract which the commissioners allotted to him. The appellee, Snead, owns and occupies a larger tract of land adjacent to the parcel of this tract which the commissioners assigned to him. This lot assigned to J. C. Snead, who owned three-fifths of the property, contains sixteen and twenty-two one hundreths acres, upon which the residence and spring are located, and immediately adjacent to this is the seven acres of land with the stable, which was assigned to Melissa Snead, his wife. The appellees have made common cause, and are here

insisting that they are entitled to have the entire tract sold, relying much upon the fact that the commissioners reported that if the land should be divided into five parcels and then each of these parcels should be sold separately, thus sold separately they would sell for less in the aggregate than if the thirty-one acres were sold as one tract. This suggestion is specious, but not convincing. The argument is unsound here, because there is neither necessity nor reason for selling the property in five separate tracts, and no one desires to do so. If the appellees wish to sell their twenty-three and twenty-two one hundredths acres of land, which is not a very narrow strip of land and upon which is the dwelling, stable and spring, in one parcel, there is nothing in this record to indicate that the value of their interests will be sacrificed, or injuriously affected. There is nothing to support the argument that they would receive any greater sum if the entire tract, including the eight acres which should be assigned to the appellant, were sold. On the other hand, to force the appellant to part with his eight acres along with the rest of the tract, would, as we conclude, force upon him a substantial sacrifice of his interests. Perhaps if he did not own the tract of land immediately adjoining, to which he can attach the eight acres, this might not be true; but as was shown in *Custis* v. *Snead, supra,* it is not only the condition of the subject, *i. e.,* the land to be divided, but the situation and interest of the parties involved in the particular suit which should also be considered.

From our point of view, it is quite evident that the appellant should have his share of the land allotted to him in kind, and this can and should be done because he so desires in his own interest, and it is not shown that the value of the residue of the land allotted

to the appellees will be thereby diminished. They may either hold it in accordance with the allotment and use it in connection with or attach it to the adjacent land of J. C. Snead, or, on the contrary, if they persist in their desire to sell it, they are free to do so, and do not need the intervention of a court.

The burden was upon the complainants to show that the land could not be conveniently divided in kind without a sacrifice of the interests of the owners. In this they have failed. A fair consideration of the conceded facts shows that the land can be conveniently partitioned by allotting four-fifths of it in value to the appellees and one-fifth in value of it to the appellant, Bridge; that his interests will be thereby promoted, and there is no evidence that partition in kind will impose any injury, diminution in value or damage upon the appellees.

The decree appealed from, which directed a sale of the entire property, will, therefore, be reversed, and the case remanded with directions to the trial court to confirm the report of the commissioner dated December 21, 1927, and filed December 28, 1927, and to enter a decree for partition in kind in accordance therewith, subject to the right of the appellees to have their four-fifths assigned to them as an entirety.

*Reversed and remanded.*