In re David Preston HALEY and Caroline Anne Haley, Debtors.

Richard J. SPEAR and California Federal Savings and Loan Association, Plaintiffs,

v.

CROW CANYON OFFICE PARK PARTNERS, Defendants.

Bankruptcy No. 4 88 01754 W. Adv. No. 4 89 0077 AT.

United States Bankruptcy Court, N.D. California.

May 9, 1989.

Randolph L. Howard, Frandzel & Share, San Francisco, Cal., for co-plaintiff, California Federal Sav. & Loan Ass'n.

Richard J. Spear, trustee, Oakland, Cal., in pro per.

Robert L. Hughes, Lempres & Wulfsberg, Oakland, Cal., for defendants.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Plaintiff, the chapter 11 trustee of the above-captioned estate, (the "Trustee") sought to sell certain real property (the "Property") owned jointly by the estate and Crow Canyon Office Park Partners ("CCOPP"), a limited partnership, pursuant to 11 U.S.C. § 363(h). CCOPP opposed the sale. California Federal Savings & Loan Association (the "Bank"), which claimed a security interest in the Property securing a debt in excess of the total sales price, was granted leave to intervene as a party plaintiff and took primary responsibility for prosecuting the action on behalf of the Trustee. At trial, the Court permitted the joinder as an additional defendant of the successor in interest to CCOPP, referred to

as CCOPP II, another limited partnership.[1] After trial pursuant to an agreed statement of facts, for the reasons set forth below, the Court finds that the Trustee and the Bank have failed to meet the requirements of 11 U.S.C. § 363(h). Accordingly, the Court enters judgment in favor of defendants, denying the Trustee leave to sell the Property. This memorandum shall serve as findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## SUMMARY OF FACTS

The Property consists of 21 two-story office buildings located in a park-like setting on Crow Canyon Road in San Ramon, California. For a time, until sometime in 1985, David and Caroline Haley (the "Haleys"), the above-captioned debtors, were the sole owners of the Property. In 1985, David Haley formed a limited partnership entitled Crow Canyon Office Park Partners of which he was designated the general partner. By agreement with the Haleys, CCOPP acquired a 17.785% interest in the Property for an unspecified sum. The remaining interest in the Property was retained by the Haleys.

At the time CCOPP acquired its interest in the Property, the Property had an appraised value of approximately $18,000,000 and was encumbered by mortgages in favor of the Bank securing debt totalling approximately $12,000,000. On April 14, 1988, the Haleys filed a petition seeking relief under chapter 11 of the Bankruptcy Code. By the time of trial of this adversary proceeding, the Bank's secured debt had increased to over $15,000,000 and the fair market value of the Property was conceded to be substantially less than that amount.

At the direction of the bankruptcy judge to whom the chapter 11 case was assigned, the Trustee solicited offers to purchase the Property and obtained court approval of a sale of the Property to a third party for $10,660,000. CCOPP opposed the sale. It was undisputed that, if the Trustee were given leave to sell the Property, all net proceeds from the sale would be paid to the Bank. The Trustee expressly waived any claim to fees based on the sale of the Property.

Prior to the time of trial, the Bank was granted relief from the automatic stay pursuant to 11 U.S.C. § 362. A nonjudicial foreclosure sale pursuant to the Bank's deed of trust was scheduled for May 10, 1989.

## DISCUSSION

Section 363(h) of Title 11 provides as follows:

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if–

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The parties agree that the Trustee can sell the Property under 11 U.S.C. § 363(h) only if he satisfies each of the four requirements specified above. CCOPP does not

---

1. After the bankruptcy case was filed, David Haley was removed as general partner of CCOPP, and Alan Parbury was designated acting general partner. In addition, a new limited partnership was formed, of which Alan Parbury was also designated acting general partner. CCOPP's interest in the Property was transferred to the new limited partnership. Reference to CCOPP hereinafter will be deemed, as appropriate, to include its successor-in-interest, the new limited partnership.

dispute that the Trustee can satisfy the requirements set forth in 11 U.S.C. § 363(h)(2) and § 363(h)(4). Thus, the only disputed issues are whether: (1) partition of the Property in kind is impracticable; 11 U.S.C. § 363(h)(1); and (2) the benefit to the estate from the sale of the Property as a whole would outweigh any detriment to the co-owners; 11 U.S.C. § 363(h)(3).

### A. IS PARTITION IN KIND IMPRACTICABLE?

■■■ The Trustee and Bank apparently concede that physical partition of the Property is not impracticable.[2] However, they contend that partition is legally impracticable. The Bank contends that CCOPP, when it was formed, entered into a tenancy-in-common agreement with the Haleys in which it waived its right to demand partition for a period of thirty years and that this waiver excuses the Trustee from complying with 11 U.S.C. § 363(h)(1). CCOPP disputes this contention.

First, CCOPP argues that no tenancy-in-common agreement was ever executed. Second, it argues that, even if the agreement had been executed, the waiver provisions were mutual and precluded partition by sale as well as by physical division. Thus, if such a waiver were deemed binding at all in a bankruptcy context, it would be equally binding on the Trustee and would prevent him from selling the Property pursuant to 11 U.S.C. § 363(h). Finally, CCOPP argues that a contractual waiver of the right to partition is not binding in a bankruptcy context. Thus, even if the tenancy-in-common agreement had been executed, it would not prevent a trustee-in-bankruptcy from selling co-owned property pursuant to 11 U.S.C. § 363(h) nor relieve him from meeting the requirements of that statute including the requirements of 11 U.S.C. § 363(h)(1).

The Court need not reach CCOPP's second and third argument because the Bank did not succeed in proving that the tenancy-in-common agreement had ever been executed. The Bank was unable to produce either the original or a signed copy of the agreement at trial. Both counsel represented that diligent efforts had been made by all concerned to locate a copy of the agreement without success. Moreover, David Haley could not even testify with certainty that he had ever signed such a document on behalf of CCOPP.

Furthermore, no evidence was presented that the Haleys and CCOPP entered into such an agreement orally, even assuming that such an agreement would be enforceable. Counsel for CCOPP conceded that a copy of a proposed tenancy-in-common agreement had been included in the offering circular, pursuant to which limited partnership interests in CCOPP were acquired. However, the Court does not believe that this is sufficient to establish a binding agreement between CCOPP and the Haleys.

Nevertheless, for a reason not stressed by the Trustee or the Bank, the Court is satisfied that physical partition of the Property is impracticable. The Property is encumbered as a whole by a single deed of trust securing a debt in excess of the value of the Property. Neither party was able to demonstrate to the Court the present ability to satisfy this secured debt. The right of a co-owner to demand that real property be physically divided does not carry with it the right to affect the interests of a secured party in that real property. Thus, the Court cannot apportion the Bank's deed of trust so that only a portion of the real property secures only a proportionate part of the debt. *Cf.* 48 Cal.Jur.3d, § 32, p. 270 (Bancroft–Whitney Co. 1979); *Cummings v. Cummings,* 75 Cal. 434, 17 P. 442 (1888); *Bridge v. Snead,* 151 Va. 383, 145 S.E. 338 (1928).

While each portion of the Property could remain encumbered by the full amount of the debt, this seems impractical. *Cf. Spies v. Prybil,* 160 N.W.2d 505 (Iowa 1968).

---

2. The record on this point is somewhat confused. Although this point was conceded by the Trustee and the Bank at the Status Conference and in the Agreed Statement of Facts, the Bank's trial brief contained some argument that physical partition was impractical. However, no argument was made nor evidence introduced at trial to support this position. Therefore, the Court finds that the Bank had effectively waived this claim prior to trial.

Such a provision would defeat the obvious purpose of partitioning the Property—i.e., to disentangle the interests of the co-owners. As long as each co-owner remained fully liable on the secured debt, each would essentially be a guarantor of the other's obligation. Thus, the physical partition of the Property would be an incomplete and futile remedy.

## B. DOES BENEFIT TO ESTATE OUTWEIGH DETRIMENT TO CO-OWNERS?

CCOPP also opposes the sale of the Property on the ground that the Trustee cannot demonstrate that the benefit to the estate from the proposed sale outweighs the detriment to CCOPP as required by 11 U.S.C. § 363(h)(4). It is undisputed that the net proceeds from the proposed sale will be insufficient to satisfy the Bank's claim in full, let alone to pay any of the administrative or general, unsecured claims of the estate. In recognition of this fact, the Trustee has waived any right to a fee as a result of the sale. *In re Lambert Implement Co.*, 44 B.R. 860, 11 C.B.C. 2d 946 (Bankr.W.D.Ky.1984).

Nevertheless, the Bank argues that the estate will benefit from the sale because the sale will eliminate the possibility of a substantial unsecured claim for the amount by which the Bank's claim exceeds the value of the Property. Although the Bank's secured debt is nonrecourse, the Bank argues that, if a reorganization plan were confirmed providing for retention of the Property by the estate, the Bank would be entitled to such an unsecured claim pursuant to 11 U.S.C. § 1111(b)(1)(A) unless the Bank elected to have its claim treated as fully secured under 11 U.S.C. § 1111(b)(2).

The Bank also urges that CCOPP will suffer no detriment from the proposed sale since it has no equity in the Property. The Bank attempted to establish through examination of the acting general partner of CCOPP that CCOPP has no financial ability to pay off or cure the secured debt on the property. The Bank also points out that, although in theory CCOPP may have a right to file an action in state court seeking physical division of the Property, it had not done so to date. As a result, it would be unable to bring such an action to trial prior to the May 10, 1989 foreclosure sale.

■ CCOPP contends that the proposed sale would harm it. It purports to be attempting to obtain financing to permit the cure of delinquencies on the Bank's claim. Furthermore, CCOPP points out that the benefit to the estate must "outweigh" the detriment to the co-owner. Thus, if there is neither benefit to the estate nor detriment to CCOPP, the Trustee fails to meet his burden and is not entitled to sell the Property.

■ The Court agrees with the latter point. However, the Court cannot find with absolute certainty that the sale would result in no detriment to CCOPP. Under state law, CCOPP would be able to prevent the foreclosure sale merely by curing the delinquencies on the Bank's claim and paying any costs incurred as a result of the defaults on the secured debt at any time up to five days prior the foreclosure sale. Cal. Civ.Code § 2924c(a)(1), (e). The only way CCOPP can prevent the sale of the Property under 11 U.S.C. § 363(h) is by paying the estate an amount equal to the proposed sale price—presumably, a much greater amount. 11 U.S.C. § 363(i).

The Court is skeptical that CCOPP will be able to obtain the necessary financing to cure the delinquencies on the Bank's secured debt. However, it is unable to find that there is no possibility that CCOPP can do so. The elimination of CCOPP's right to cure under state law, absent such a finding, does constitute a tangible detriment to CCOPP.

The Court gives somewhat less weight to the alleged benefit to the estate which would result from the proposed sale; i.e., the elimination of CCOPP's unsecured claim. Given the pending foreclosure sale and the excess of the secured debt over the value of the Property, it appears highly unlikely that a reorganization plan will be filed and confirmed providing for retention of the Property. Even if this were to occur, it appears equally unlikely, given the

lack of other assets in the estate, that the Bank would fail to make an election under 11 U.S.C. § 1111(b)(2) to have its claim treated as fully secured. Thus, the purported benefit to the estate is tenuous at best and does not outweigh the detriment to the co-owner as required by 11 U.S.C. § 363(h)(3).

 The Bank also argues that the partial satisfaction of its secured debt constitutes a benefit to the estate, relying on dicta in *In re Bell*, 80 B.R. 104 (M.D.Tenn. 1987). In that case, the District Court noted without criticism the Bankruptcy Court's conclusion that satisfaction of a secured claim *alone* could constitute a benefit to the estate:

> The [Bankruptcy] Court reasoned that, because secured lienholders, by way of 11 U.S.C. § 363(f) can effectively block a § 363(h) sale of a particular piece of property in which they have a security interest should they so desire, it is senseless to hold that satisfaction of their claims, through the sale of such property, would not benefit the estate.

*In re Bell*, 80 B.R. at 106. But, see, *contra, In re Ray*, 73 B.R. 544 (Bankr.M.D.Ga. 1987).

The Bankruptcy Court's reasoning may have been clear to the District Court in *Bell*, but it is not to this Court. First, it is unclear how the secured creditor in *Bell* could have blocked a sale under 11 U.S.C. § 363(h) pursuant to 11 U.S.C. § 363(f) since it was apparently found that the sale price would exceed the amount of the lien. See 11 U.S.C. § 363(f)(3). However, even if the amount of the lien had exceeded the sale price, as it does here, it is unclear how the ability of an undersecured creditor to block the sale demonstrates that a sale to which an undersecured creditor consents necessarily benefits the estate. Rather, it would appear to demonstrate that a secured creditor's interests and the interests of the estate in such a circumstance do not always coincide.

The satisfaction of a claim against the estate clearly confers a benefit on the estate, whether the claim satisfied is secured or unsecured. However, here, if the sale is not approved, it appears that the Bank's claim will be satisfied in short order in the manner bargained for by the Bank when it took the Property as security for its debt: by the involuntary sale of its collateral. The Bank would apparently prefer to be paid in cash from the proposed voluntary sale rather than be forced to exercise its contractual remedies. However, it makes no perceptible difference to the estate whether the Bank's claim is satisfied in cash or through foreclosure. Thus, the fact that the proposed sale would better serve the secured creditor's inclinations does not mean that it would benefit the estate as required by 11 U.S.C. § 363(h)(3).

Finally, the Bank argues that, if the sale of the Property pursuant to 11 U.S.C. § 363(h) is not approved, CCOPP will file its own bankruptcy case, thereby staying the May 10, 1989 foreclosure sale further. While it is understandable that the Bank would wish to avoid such a risk, its avoidance cannot properly be characterized as a benefit to the estate.

## CONCLUSION

The Trustee's request for authorization to sell the Property under 11 U.S.C. § 363(h) is denied. Partition in kind of the Property is impracticable given the existence of a mortgage encumbering the whole of the Property securing a debt in excess of the Property's value. However, the Trustee has failed to satisfy 11 U.S.C. § 363(h)(3) by showing that the benefit to the estate from the proposed sale outweighs the detriment to the co-owner.